982 P.2d 815

STATE of Arizona, ex rel. Janet
A. NAPOLITANO, Attorney
General, Petitioner.

v.

Hon. Michael BROWN, Presiding Judge of
the Superior Court of the State of Ari-
zona, in and for the County of Pima,
Respondent,

and

Kevin Artice Miles, Real
Party in Interest.

No. CV–98–0547–SA.

Supreme Court of Arizona,
En Banc.

June 4, 1999.

Janet A. Napolitano, The Attorney General By: Paul J. McMurdie, Chief Counsel Criminal Appeals Section, Phoenix, Attorney for Petitioner.

Bruner & Bowman, P.C. By: Sean H. Bruner Tucson Attorney for Real Party in Interest.

McGREGOR, Justice.

¶ 1 The issue raised in this special action is whether the legislature, by adopting a statute that, among other provisions, set time limits for filing petitions for post-conviction relief that conflict with time limits set in rules adopted by this court, violated the separation of powers doctrine. We accepted jurisdiction under article VI, section 5.1 of the Arizona Constitution. For the following reasons, we hold unconstitutional those portions of the statute that define the time limits.

### I.

¶ 2 Kevin Artice Miles, a death row inmate seeking post-conviction relief, asked the Pima County Superior Court to declare unconstitutional certain 1998 legislative amendments to Arizona Revised Statutes (A.R.S.) § 13–4234.D. and .F (the amendments). Miles argued that the amendments, which define time limits for filing a petition for post-conviction relief, impermissibly conflict with the time limits established by this court in Rule 32.4.c, Arizona Rules of Criminal Procedure (Rule 32.4.c), and therefore violate the separation of powers doctrine. The State countered that the amendments do not violate the Constitution because the legislature

enacted them pursuant to the Victim's Bill of Rights (VBR), article II, section 2.1 of the Arizona Constitution, which authorizes the legislature to enact procedural rules "to ensure the protection of these [victims'] rights." ARIZ. CONST. art. II, § 2.1(A)11. Specifically, the State argued, the VBR permits the legislature to enact rules intended to assure the right of victims to a speedy trial and prompt and final resolution of criminal cases. *Id.* at § 2.1(A)10.

¶ 3 The trial court agreed with Miles, and held the amendments unconstitutional on several grounds. First, the amendments usurped this court's exclusive procedural rulemaking authority granted by article VI, section 5.5 of the Arizona Constitution. Second, the State offered no evidence to support its assertion that the legislature enacted the amendments pursuant to the VBR. In fact, the trial court found, the legislature enacted the amendments to fulfill the opt-in provisions of federal habeas laws. *See* 28 U.S.C.A. §§ 2261–2265 (West Supp.1999). Third, even if the legislature did pass the amendments pursuant to the VBR, the State did not show that the amendments would have any significant effect on the time it takes to bring a capital case to a prompt and final conclusion.

### II.

[1] ¶ 4 The amendments grant a defendant less time to seek post-conviction review than do the rules of this court. Rule 32.4.c allows a defendant in a capital case 120 days after appointment of counsel to file a petition for post-conviction relief. The defendant can obtain one sixty-day extension upon a showing of good cause, and additional thirty-day extensions upon further showing of good cause.[1] The amendments, in contrast, allow a capital defendant sixty days to file a petition for post-conviction relief, and permit the court to grant only one thirty-day extension. That conflict raises the question whether the legislature, in passing the amendments, exceeded its authority.

---

1. In non-capital cases, the rule allows defendants 60 days to file a petition for post-conviction relief, with one 30–day extension permitted upon showing good cause. The trial court may grant an additional 30–day extension in non-capital cases upon a showing of extraordinary circumstances. The amendments essentially leave intact those provisions of Rule 32.4.c.

¶ 5 In Arizona, the legislature is endowed with the legislative power of the State, and has plenary power to consider any subject within the scope of government unless the provisions of the Constitution restrain it. *See Giss v. Jordan,* 82 Ariz. 152, 159, 309 P.2d 779, 783–84 (1957). Put another way, the legislature "has all power not expressly prohibited or granted to another branch of the government." *Adams v. Bolin,* 74 Ariz. 269, 283, 247 P.2d 617, 626 (1952).

¶ 6 The Constitution, however, vests the power to make procedural rules exclusively in this court. *See* ARIZ. CONST. art. VI, § 5 ("The Supreme Court shall have: ... Power to make rules relative to all procedural matters in any court.") *See also Slayton v. Shumway,* 166 Ariz. 87, 91, 800 P.2d 590, 594 (1990); *State v. Fowler,* 156 Ariz. 408, 411, 752 P.2d 497, 500 (App.1987) (approved in *State v. Bejarano,* 158 Ariz. 253, 254, 762 P.2d 540, 541 (1988)). The Constitution also divides the powers of government into three separate departments and directs that "no one of such departments shall exercise the powers properly belonging to either of the others." ARIZ. CONST. art. III. Therefore, under the traditional separation of powers doctrine, the legislature lacks authority to enact a statute "if it conflicts with or 'tends to engulf' " this court's constitutionally vested rulemaking authority. *State v. Robinson,* 153 Ariz. 191, 197, 735 P.2d 801, 807 (1987).

¶ 7 The amendments, by lowering the time limits for filing petitions for post-conviction relief in capital cases from 120 days, as Rule 32.4.c allows, to 60 days, directly conflict with a rule promulgated pursuant to this court's constitutionally vested, exclusive rulemaking authority. Under similar circumstances, our court of appeals has held comparable statutes unconstitutional. *See Pompa v. Superior Court,* 187 Ariz. 531, 931 P.2d 431 (App.1997) (holding A.R.S. § 13–2314.M unconstitutional because it conflicted with existing rules this court promulgated); *State v. Fowler,* 156 Ariz. at 413, 752 P.2d at 502 (holding a statutory one-year time limitation applying to filing petitions for post-conviction relief unconstitutional because the law conflicted with Rule 32). Absent some unusual circumstance, our inquiry would end here,

and we would hold the portions of the amendments shortening the time limits for filing petitions for post-conviction relief in capital cases violative of the separation of powers requirement.

¶ 8 The State maintains, however, that the constitutional grant of authority to the legislature to enact procedural rules pursuant to the VBR takes precedence over the Constitution's general grant of rulemaking authority to this court. According to the State, the amendments meet constitutional requirements because the legislature enacted them pursuant to paragraph ten of the VBR, which mandates that crime victims have the right "[t]o a speedy trial or disposition and prompt and final conclusion of the case after the conviction and sentence." ARIZ. CONST. art. II, § 2.1(A)10. We disagree with the State's assertion for three reasons.

¶ 9 First, no evidence supports the State's contention that the legislature enacted the amendments pursuant to the VBR. To the contrary, the history surrounding the amendments reveals that the legislature enacted the amendments to allow Arizona to utilize the opt-in provisions of recent federal habeas legislation commonly referred to as the Antiterrorism and Effective Death Penalty Act (AEDPA). *See* 28 U.S.C.A. §§ 2261–2265 (West Supp.1999). The legislature passed the amendments as part of an emergency enactment, which also included provisions for the appointment and compensation of counsel in capital post-conviction cases, needed to permit Arizona to conform to the requirements of the AEDPA. *See Minutes of Arizona State Senate Committee on Judiciary on H.B. 2210,* 43d Leg., 2d Reg. Sess. (Ariz.1998) (hereinafter *Minutes* ). Indeed, the legislative history surrounding the amendments contains no reference to the VBR. *See Minutes.* Thus, we find no support for the State's argument that the legislature passed the amendments pursuant to the VBR.

¶ 10 In addition, the State's assertion that the legislature enacted the amendments pursuant to the VBR is illogical on two fronts. First, the amendments halve the time to file a petition for post-conviction relief in a capital case, yet leave unchanged the

time allotted to file a petition for post-conviction relief in a non-capital case. If the purpose of the amendments had been to ensure victims a prompt and final conclusion to all criminal cases, the legislature would have applied shortened time limits to all criminal cases, not only to capital cases. The State suggests no reason that the legislature would have intended to address the right to a speedy trial in only one category of criminal cases, given the fact that the rights guaranteed by the VBR extend to victims of all crimes. Second, the State conceded at oral argument that decreasing the time for filing a petition for post-conviction relief in a capital case from 120 to 60 days actually would have minimal impact on the time needed to bring a capital case to conclusion.[2]

¶ 11 Most importantly, even if evidence existed to support the State's contention, our decision in *Slayton, supra*, limits the legislature's rulemaking power under the VBR. In *Slayton*, a case interpreting paragraph eleven of the initiative that became the VBR, we held that "[t]he power to make rules is a substantive question involving the separation of powers," and noted that "[c]ourts have inherent power ... to formulate their own procedural rules." 166 Ariz. at 91, 800 P.2d at 594. We opined that voters who ·advocate victims' rights would also support the notion that "the traditional separation of powers in the state [should not] be changed to vest the legislature with the entire rulemaking power for all criminal cases." *Id.* Thus, we concluded that the rulemaking power of the legislature granted by the VBR extends only to those "procedural rules pertaining to victims and not with the substantive general subject of the rulemaking power." *Id.* at 92, 800 P.2d at 595. Subsequently, in *Champlin v. Sargeant*, 192 Ariz. 371, 373 n. 2, 965 P.2d 763, 765, n. 2 (1998), we further explained that the legislative rulemaking power under the VBR "extends only so far as necessary to protect rights *created by* the [VBR] and not beyond." (Emphasis added.) Thus, the scope of legislative rulemaking power under the VBR extends to those rules that define, implement,

preserve, and protect the specific rights unique and peculiar to crime victims, as guaranteed and created by the VBR.

¶ 12 Paragraphs one through nine of the VBR not only create rights, but create rights unique and peculiar to crime victims. Those provisions ensure crime victims the right to be treated fairly; the right to receive certain information upon request; the right to be present, and be heard, at criminal proceedings; the right to refuse discovery requests made on behalf of the defendant; the right to confer with prosecutors; the right to read pre-sentence reports available to the defendant pertaining to the crime; and the right to receive prompt restitution from the perpetrator or perpetrators. *See* ARIZ. CONST. art. II, § 2.1(A)1–9. Paragraph ten, however, which addresses a general "speedy trial" right, neither creates a right nor defines a right peculiar and unique to victims. The right to a speedy trial pre-existed the VBR. *See* U.S. CONST. amend. VI; ARIZ. CONST. art. II, § 24. The right also is not peculiar to victims. Criminal defendants are vitally interested in the right to a speedy trial assured by the United States and Arizona Constitutions. In addition, Rule 8 of the Arizona Rules of Criminal Procedure defines stricter speedy trial rights than those guaranteed by the United States Constitution. *See State v. Spreitz*, 190 Ariz. 129, 136, 945 P.2d 1260, 1267 (1997). Moreover, the judicial system as a whole is vitally interested in advancing the goal of prompt, fair resolution of all actions, including criminal cases, for the benefit of all participants as well as victims.

¶ 13 Nor can we conclude that the legislative rule adopting time limits for filing a petition for post-conviction relief is necessary to ensure the protection of the victims' rights enumerated in paragraphs one through nine. Rather, the link between the legislative time limits and victims' enumerated rights is tenuous at best. Because the time limits of the amendments do not create rights or involve rights unique and specific to victims, and because they are not needed to protect the

---

**2.** Death row inmates nationwide who were executed in 1997 spent an average of 133 months on death row before their sentences were carried out. *See* Traci L. Snell, Capital Punishment 1997, U.S. DEP'T OF JUSTICE BUREAU OF JUSTICE STATISTICS BULLETIN, at T. 12 (1998).

**344**

enumerated rights of the VBR, paragraph ten of the VBR cannot serve as a source of authority for the legislature to usurp this court's rulemaking authority and enact time limits contrary to those set forth in Rule 32.4.c.

¶ 14 Having concluded that the statutory time limits conflicting with those in Rule 32.4.c are unconstitutional and not justified under the VBR, we next consider whether we can sever them from the rest of the legislation. *See Republic Inv. Fund I v. Town of Surprise,* 166 Ariz. 143, 151, 800 P.2d 1251, 1259 (1990) ("An entire statute need not be declared unconstitutional if constitutional portions can be separated."). If the unconstitutional portions of the amendments are not severable from the remainder of the law, we must strike down the legislation as a whole. *See id.* We can sever the invalid portions of a statute if "the valid parts . . . are effective and enforceable standing alone and independent of those portions declared unconstitutional . . . [and] if the valid and invalid portions are not so intimately connected as to raise the presumption the legislature would not have enacted one without the other, and the invalid portion was not the inducement of the act." *State Compensation Fund v. Symington,* 174 Ariz. 188, 195, 848 P.2d 273, 280 (1993) (citations omitted).

¶ 15 Under that test, we can sever the time limits for filing a petition for postconviction relief from the remainder of the legislation. If we remove the objectionable provisions, A.R.S. § 13–4234 still provides comprehensive procedures for filing a notice of post-conviction relief, appointing counsel for capital defendants, assigning judges, and setting stays of execution. None of the remaining provisions depend upon or are related to the time limits of A.R.S. § 13–4234.D and .F. After severance, the law remains effective and enforceable standing alone. Furthermore, we see no intimate connection between the time limits and the rest of the legislation sufficient to raise the presumption that the legislature would not have enacted the remainder of section 13–4234 without the time limits and likewise see no indication that the time limits served as an inducement

to enact this important legislation. Indeed, as legislative history indicates, the legislature discussed no connection between the time limits and other revisions of Arizona's post-conviction relief proceedings. Rather, the primary goals of the amendments were to reduce substantially the time involved in filing *federal* habeas corpus petitions through opting into the AEDPA and to ensure the appointment of qualified counsel for capital defendants in state court proceedings. *See Minutes.* Thus, we conclude that we can sever the time limits and allow the remaining provisions of section 13–4234 to remain in effect.

### III.

¶ 16 For the foregoing reasons, we hold that the time limits of A.R.S. § 13–4234.D and .F that conflict with Rule 32.4.c violate the separation of powers provision of the Arizona Constitution. We sever the unconstitutional portions of the amendments from the rest of the legislation, and thereby leave intact the remaining portions of the statute. Relief denied.

CONCURRING: Thomas A. Zlaket, Chief Justice, Charles E. Jones, Vice Chief Justice, Stanley G. Feldman, Justice, Frederick J. Martone, Justice