Present:  Kinser, C.J., Lemons, Goodwyn, Millette, Mims, and
McClanahan, JJ., and Koontz, S.J.

JAMES LUTHER BEVEL

OPINION BY SENIOR JUSTICE

v.  Record Nos. 102246 & 102323  LAWRENCE L. KOONTZ, JR.

November 4, 2011

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In these appeals, we consider what effect the death of a
convicted criminal defendant has on a pending appeal and the
underlying criminal prosecution.  Our consideration of these
issues invokes the determination of the extent of the
application of the so-called "abatement doctrine" in such
instances under the law of Virginia.  We have not addressed
this issue previously in a reported opinion.

BACKGROUND

Because the issues raised by these appeals concern only
the proceedings that followed the defendant's death, a brief
summary of the underlying criminal conviction of the
defendant will suffice.  On May 21, 2007, James Luther Bevel
was indicted by the Grand Jury in the Circuit Court of
Loudoun County for violating Code § 18.2-366 by having sexual
relations with his daughter who was at the time between the
ages of 13 and 18.  The felony indictment was founded on an
allegation made by Bevel's adult daughter that her father had
sexual relations with her repeatedly during a two-year period

between 1992 and 1994 while they were living in Loudoun County.  At trial, the victim testified that these acts of sexual abuse began when she was 6 years old and living in another state.  Bevel was convicted in a jury trial on April 10, 2008.  The circuit court entered a final sentencing order on October 27, 2008, imposing the jury's verdict of 15 years imprisonment and a fine of $50,000.

The following facts reflect the procedural history of the subsequent appeals in this case.  On November 4, 2008, Bevel's counsel, from the Office of the Public Defender, noted an appeal of Bevel's conviction.  On December 8, 2008, counsel filed a notice of filing of transcripts, thus completing the record of the trial for transmission to the Court of Appeals as required by Rule 5A:8(b).  The record was duly received by the Court of Appeals, and the appeal was assigned Record Number 2646-08-4 (hereafter, "the merits appeal").

On December 29, 2008, Bevel's counsel filed a "notice of death" in the circuit court and the Court of Appeals averring that Bevel had died on December 19, 2008.  Simultaneously, counsel filed a motion to withdraw as counsel in the Court of Appeals, asserting that as a result of Bevel's death she was unable to proceed with the representation as she "no longer [had] a client with whom to consult or from whom to take

2

direction regarding this appeal."  Within none of these pleadings did counsel request that the prosecution abate.  On January 23, 2009, the Court of Appeals denied the motion to withdraw as counsel.

Thereafter, Bevel's counsel filed a "motion to dismiss" in the circuit court.  Within the motion, counsel noted that Code § 8.01-20 allowed, in the discretion of the court, for the abatement of a civil case in which a party had died while the case was pending appeal.  Conceding that there were no reported appellate cases in Virginia addressing the abatement or dismissal of a criminal prosecution in such circumstances, counsel noted that in a prior unreported decision the circuit court had ruled that when a defendant dies while his appeal is pending, "[the] conviction must be dismissed."  Counsel further averred that abatement ab initio of criminal convictions when the defendant dies while the conviction is pending appeal is the rule in a majority of other jurisdictions that have considered the question.  By an order dated February 26, 2009, the circuit court denied the motion to dismiss.

On March 25, 2009, Bevel's counsel filed a "motion to abate conviction ab initio" in the Court of Appeals. Reciting the same argument for abatement of the entire case as that contained in the motion to dismiss filed in the

3

circuit court, counsel further noted that continuation of the appeal was "inappropriate as counsel for the deceased cannot fulfill . . . her ethical obligations, to wit: counsel cannot communicate with her client and therefore lacks authority either to proceed with the appeal or to withdraw the appeal." She further maintained that the Commonwealth would suffer no prejudice from the abatement of the conviction "as it can neither retry the accused if his appeal succeeds nor impose punishment upon the accused if his appeal fails." The Commonwealth did not file a response to this motion to abate.

On March 27, 2009, the Court of Appeals entered an order suspending the time for filing the necessary petition for appeal in the merits appeal.[1] On August 26, 2009, the Court

---

[1] Although Bevel's counsel had done all that was required to advance the appeal from the circuit court to the Court of Appeals, unless and until a timely petition for appeal was filed the appeal would not have been perfected, thus, the Court suspended the time for filing the petition in order to give consideration to the motion to abate. In criminal cases in Virginia, other than in cases where a sentence of death is imposed, the awarding of an appeal is discretionary and not a matter of right. Code § 17.1-406(A)(i); see, e.g., West v. Commonwealth, 43 Va. App. 327, 340-41, 597 S.E.2d 274, 280 (2004) (holding that a merits review is undertaken only after an appeal is granted and only as to the issues accepted by the Court). As will be explained below, in some jurisdictions abatement ab initio applies only when a convicted defendant dies and at that time he was entitled to an appeal of right or where a discretionary appeal had already been granted. Although Bevel had not yet perfected his discretionary appeal on the merits of his conviction, we emphasize that our resolution of these appeals does not rest

4

entered an order remanding the case to the circuit court "with instructions to hold a hearing and to abate the prosecution ab initio, unless good cause is shown by the Commonwealth not to do so."

The circuit court complied with the mandate of the Court of Appeals' order by conducting a hearing on September 10, 2009. In support of its contention that the conviction should not abate, the Commonwealth presented testimony from the victim and one of her sisters who also claimed that Bevel had sexually abused her. Both women stated, among other reasons, that they opposed having the conviction abate because acknowledgement by the court of their father's guilt provided them with a sense of closure and validation.

On September 30, 2009, the circuit court entered an order denying the motion to abate Bevel's conviction, finding that the Commonwealth had an interest in maintaining the conviction for the benefit of the victim and as a "powerful symbol" that a guilty verdict represents. The court further concluded that following conviction the presumption of innocence no longer applied and, thus, abatement should not be favored in such cases. For these reasons, the court ruled

on the fact that his appeal was discretionary, not of right, and had not yet been granted.

that the Commonwealth had established good cause for not abating the conviction.

Bevel's counsel noted an appeal from the judgment of the circuit court finding that there was good cause not to abate the conviction. The Court of Appeals treated the appeal as if it were from a separate proceeding and assigned it Record Number 2373-09-4 (hereafter, "the good cause appeal"). After receiving briefs and hearing oral argument, the Court issued an unpublished opinion affirming the judgment of the circuit court. Bevel v. Commonwealth, Record No. 2373-09-4 (September 14, 2010).

The Court of Appeals first reviewed similar cases in that Court and in the Supreme Court, noting that prior dispositions of criminal appeals when the defendant had died were inconsistent, with the appellate court in which the appeal was pending sometimes abating the conviction and other times simply dismissing the appeal and leaving the conviction intact. Id., slip op. at 5-6. Thus, the Court concluded that there was no clear authority in Virginia for routinely abating a criminal conviction ab initio when the defendant dies while pursuing an appeal. Id., slip op. at 6.

The Court then considered whether the circuit court had correctly determined the factors to consider in determining whether there was good cause not to abate the conviction and

whether it properly applied the facts from the hearing in determining that Bevel's conviction should not abate. The Court held that these matters were committed to the circuit court's discretion and found no abuse of that discretion. Id., slip op. at 7. Accordingly, the Court affirmed the judgment of the circuit court refusing to abate Bevel's conviction. Id., slip op. at 8.

On October 14, 2010, the Court of Appeals issued a rule to show cause in the merits appeal, which required Bevel's counsel to show why that appeal should not be dismissed as moot in light of the Court's judgment in the good cause appeal. In her response to the show cause, Bevel's counsel maintained that dismissal of the merits appeal would be premature, as a petition for rehearing en banc was pending in the good cause appeal, and, failing that, she intended to appeal the judgment to this Court. Counsel also contended that the dismissal of the merits appeal would render the appeal of the abatement issue equally moot, and deny the Court of Appeals sitting en banc and this Court jurisdiction to consider whether abatement had been properly denied. Notably, although counsel referenced an assertion made by the Commonwealth in the circuit court "that Mr. Bevel's death should not necessarily act as a bar to hearing the [appeal from the underlying conviction] on its merits," she did not

7

retreat from the position first stated in her motion to withdraw as counsel that she could not ethically pursue the appeal, nor did she contend that the appeal could go forward in its current posture without an appellant or with the substitution of a personal representative of Bevel's estate or other party. Rather, counsel only requested that the merits appeal remain suspended while she pursued the appeal of the abatement issue.

After the petition for rehearing en banc on the good cause issue was denied, Bevel's counsel noted an appeal of that judgment to this Court on November 1, 2010. On November 16, 2010, the Court of Appeals entered an order in the merits appeal dismissing the appeal as moot. Counsel noted an appeal from this judgment as well. By orders dated May 5, 2011, we awarded appeals from the Court of Appeals' judgments in the good cause appeal (our Record Number 102246) and the merits appeal (our Record Number 102323), consolidating the appeals for briefing and argument.

## DISCUSSION

While we have not previously addressed in a reported opinion what effect the death of a criminal defendant has on a conviction or an appeal that is pending at the time of the defendant's death, the issue has arisen in several prior appeals before this Court. As the Court of Appeals noted in

8

its opinion and we acknowledge, there has been a disparity in the treatment of such cases, which have always been disposed of by an unpublished order. Compare, e.g., Isaac v. Commonwealth, Record No. 102208 (March 30, 2011) (firearms possession appeal abated ab initio) and Alaia v. Commonwealth, Record No. 011575 (March 15, 2002) (capital murder appeal abated ab initio) with Barber v. Commonwealth, Record Nos. 930409 & 930492 (November 9, 1993) (capital murder appeal dismissed as moot).

In these previous cases, however, the orders were entered solely in response to a notice of the defendant's death from his counsel or the Commonwealth. The present case presents the first opportunity this Court has been given to address the issue of abatement after receiving briefs and argument of counsel. Accordingly, we are of opinion that the prior orders in which abatement was applied have no precedential value. Cf. Sheets v. Castle, 263 Va. 407, 410-12, 559 S.E.2d 616, 618-19 (2002) (holding that with respect to unpublished order denying a petition for appeal, a clear statement of the grounds for the denial "is indispensable in assessing its potential applicability in future cases" and that "unless the grounds upon which the [denial] is based [are] discernable from the four corners of the . . . order, the denial carries no precedential value").

9

We begin by first considering the historical context of the abatement doctrine. We further consider how it has been applied to criminal prosecutions in other jurisdictions.

Abatement is the dismissal or discontinuance of a legal proceeding "for a reason unrelated to the merits of the claim." Black's Law Dictionary 3 (9th ed. 2009). Abatement can occur in civil cases for a variety of reasons, see 1 Am. Jur. 2d Abatement, Survival, and Revival §1 (2006), but in criminal prosecutions abatement traditionally has been limited to circumstances where the defendant dies prior to a final resolution of the case in the trial court. It is clear that when a defendant dies before the trial court has confirmed a verdict by a final order of judgment, the death of the defendant causes the prosecution to abate. United States v. Lay, 456 F. Supp. 2d 869, 874 (S.D. Tex. 2006) (citing United States v. Asset, 990 F.2d 208, 211 (5th Cir. 1993)); see also United States v. Oberlin, 718 F.2d 894, 896 (9th Cir. 1983). Obviously, subsequent to the death of the defendant there is no one upon whom the trial court can impose a final judgment. When final judgment of conviction has been entered in the trial court, however, there is less certainty as to the effect of the death of the defendant at the time he was pursuing, or at least had the opportunity to pursue, a direct appeal of the conviction.

The origin of the abatement doctrine as applied to criminal appellate cases is unclear, with little or no evidence of its application prior to the late nineteenth century.  See Timothy A. Razel, Note, Dying to Get Away With It: How The Abatement Doctrine Thwarts Justice-And What Should Be Done Instead, 75 Fordham L. Rev. 2193, 2198 (2007). These early decisions were occasionally quite terse and provide little insight into the reasons the courts elected to abate a case or not, or even as to what aspect of the case was being abated – the appeal only or the entire prosecution. See, e.g., List v. Pennsylvania, 131 U.S. 396, 396 (1888) (per curiam) (dismissing a writ of error because "this cause has abated"); O'Sullivan v. People, 32 N.E. 192, 194 (Ill. 1892) (per curiam) (denying motion to consider an appeal and render judgment nunc pro tunc because "the writ of error abated upon the death" of the defendant); March v. State, 5 Tex. Ct. App. 450, 456 (Tex. Crim. App. 1879) (granting a "motion to abate the proceedings").

The modern statement of the abatement doctrine is found in Durham v. United States, 401 U.S. 481, 483 (1971)(per curiam), in which the United States Supreme Court held that "death pending direct review of a criminal conviction abates not only the appeal but also all proceedings had in the prosecution from its inception."  The defendant in Durham

11

died after filing a petition for a writ of certiorari. The Supreme Court granted the defendant's writ, vacated the judgment of the Ninth Circuit affirming his conviction, and remanded the case to the district court with instructions to dismiss the indictment. Id. Justice Blackmun dissented, contending "the situation is not one where the decedent possessed, and had exercised, a right of appeal." Id. at 484 (Blackmun, J., dissenting). Thus, rather than abating the entire proceeding, Justice Blackmun contended that the proper remedy was to "merely dismiss the decedent's petition for certiorari," noting further that "[i]f, by chance, the suggestion of death has some consequence upon the survivor rights of a third party (a fact not apparent to this Court), the third party so affected is free to make his own timely suggestion of death to the court of appeals." Id. at 484-85.

Just five years later in Dove v. United States, 423 U.S. 325, 325 (1976) (per curiam), the Supreme Court, with only Justice White dissenting, overruled Durham. In a concise opinion, the Court denied Dove's petition for certiorari because he had died before the petition was heard, overruling Durham "[t]o the extent that [it] may be inconsistent with this ruling." Id. Subsequently, however, the federal circuit courts have concluded that Dove did not abrogate the abatement doctrine entirely for criminal cases, but only for

12

those cases that had concluded their initial appeals.  See,
e.g., United States v. Moehlenkamp, 557 F.2d 126, 128 (7th
Cir. 1977) ("We do not believe that the Court's cryptic
statement in Dove was meant to alter the longstanding and
unanimous view of the lower federal courts that the death of
an appellant during the pendency of his appeal of right from
a criminal conviction abates the entire course of the
proceedings brought against him").

Nonetheless, the circuits are divided on how the
abatement doctrine applies in specific cases, such as whether
an order of restitution abates along with other aspects of
the conviction.  Compare United States v. Christopher, 273
F.3d 294, 298-99 (3d Cir. 2001) (holding restitution order
does not abate); United States v. Dudley, 739 F.2d 175,
179-80 (4th Cir. 1984) (same), with United States v. Rich,
603 F.3d 722, 728-31 (9th Cir. 2010) (holding restitution
order does abate); United States v. Estate of Parsons, 367
F.3d 409, 415 (5th Cir. 2004) (en banc) (same); United States
v. Logal, 106 F.3d 1547, 1552 (11th Cir. 1997) (same); see
also John H. Derrick, Annotation, Abatement Effects of
Accused's Death Before Appellate Review of Federal Criminal
Conviction, 80 A.L.R. Fed. 446 (1986 & Supp. 2011).

Among the states, the treatment of the abatement
doctrine is even more multifarious.  Although the issue is

13

most frequently framed as being a choice between abatement ab initio of the entire prosecution or dismissal of the appeal only, there are at least seven categories of policies on abatement: (1) abatement ab initio when the defendant dies pending resolution of his appeal; (2) abatement ab initio when the appeal at issue is an appeal of right; (3) abatement ab initio when the court has granted a discretionary application for review, thereafter treating the case as if the appellant had been given an appeal of right; (4) the case is not abated and the appeal may be prosecuted; (5) the case is not abated ab initio, but the appeal may not be prosecuted; (6) a personal representative may be substituted to avoid abatement ab initio; or, (7) the appeal abates without addressing whether the proceedings are abated ab initio. United States v. Rorie, 58 M.J. 399, 402 (C.A.A.F. 2003) (citing Tim A. Thomas, Annotation, Abatement of State Criminal Case by Accused's Death Pending Appeal of Conviction - Modern Cases, 80 A.L.R.4th 189 (1990 & Supp. 2002)). Thus, although most courts and commentators agree that abatement in some form is the majority position in the federal and state courts, see, e.g., Surland v. State, 895 A.2d 1034, 1046 (Md. 2006) (Greene, J., dissenting); Ex parte Estate of Cook, 848 So. 2d 916, 918 (Ala. 2002), it is also true that a modern trend has been to limit or modify the application of the

14

doctrine, or dispense with it entirely, though this remains a minority view. See, e.g., State v. Carlin, 249 P.3d 752, 759-60 (Alaska 2011); Surland, 895 A.2d at 1039; State v. Korsen, 111 P.3d 130, 133 (Idaho 2005).

Given the diversity of opinion in the application of the abatement doctrine, it is perhaps not surprising that the doctrine's legal underpinnings are not well established. As one court has observed, "[d]espite the common acknowledgment that abatement ab initio is a well-established and oft-followed principle . . . few courts have plainly articulated the rationale behind the doctrine." Parsons, 367 F.3d at 413. This is so, apparently, because the abatement doctrine, at least as applied to criminal prosecutions "is largely court-created." Id. at 414. It does not appear that abatement of a criminal case is addressed by statute in any jurisdiction in the United States, see Razel, supra, at 2197-98, nor is the ability to challenge abatement addressed by any statutory scheme providing for victim's rights. Douglas E. Beloof, Weighing Crime Victims' Interests In Judicially Crafted Criminal Procedure, 56 Cath. U.L. Rev. 1135, 1159 (2007).

Against this background, we now turn to the issues raised in these appeals.[2] The thrust of Bevel's counsel contentions is that under the abatement doctrine, "death [of the defendant] during the pendency of a direct appeal necessitates abatement of the conviction ab initio." The Commonwealth responds that the abatement doctrine is founded upon a false premise that a convicted defendant who dies while his appeal is pending would have ultimately prevailed and been exonerated. The Commonwealth contends that the modern trend in jurisdictions that have examined the issue is to dismiss the appeal, leaving the conviction intact, because on appeal there is no presumption of innocence and the conviction is presumed to be correct.

The Commonwealth further contends that abatement "is also outdated because it rests on the premise that criminal convictions and sentences serve only to punish the

---

[2] For the reasons that will become apparent, we do not reach the assertions of Bevel's counsel in the good cause appeal that the Court of Appeals erred in creating a "good cause" exception to the abatement doctrine and remanding the case to the circuit court for a hearing whether good cause existed to deny the motion to abate. The Court of Appeals stated in its opinion that Bevel failed to present argument on this issue and, thus, had waived this issue on appeal. Bevel, slip op. at 7 n.4. Although the Court of Appeals went on to review and approve the circuit court's application of the "good cause" exception, id., slip op. at 11-12, Bevel's counsel did not assign error to the Court's determination that the issue was waived.

16

convicted."  The modern trend, according to the Commonwealth, recognizes "that the criminal justice system does not only serve to punish, but it also serves to protect and compensate crime victims."  We believe that the Commonwealth's contentions have merit.

Reviewing the authorities cited above, it seems clear that the determination of various courts whether to abate a conviction <u>ab</u> <u>initio</u> when the defendant has died while his appeal was pending, to merely dismiss the appeal and leave the conviction intact, or to apply some intermediate solution, rests largely on the individual court's consideration of the purpose of the punishment imposed on the defendant, the interest of society in acknowledging the fact of his offense, and the potential effect on the victim or victims of the offense in erasing that fact.  We are of opinion, however, that such policy determinations fall outside the scope of the authority granted to the appellate courts of this Commonwealth by the Virginia Constitution and by statute.

Likewise, to the extent that such authority might derive from the common law of England as applicable in Virginia at the time of the founding of the Jamestown colony in 1607,

Code §§ 1-200 and -201,[3] we find no support for the notion that a criminal proceeding necessarily would abate following conviction if the defendant were to die while he might yet have obtained relief through a writ of error or some other process equivalent to a direct appeal.  To the contrary, the authorities are consistent in affirming that at common law an attainder of felony would not be affected by the death of the defendant, but that his executor or heirs could pursue a writ of error in his stead.  See, e.g., 4 William Blackstone, Commentaries *391-92; 2 William Hawkins, Pleas of the Crown 654 (John Curwood, ed., 8th ed. 1824).  The rule appears to derive from the case of Marsh and his Wife, found in the reports of Sir George Croke for the Easter Term of the

---

[3] As we recently explained in construing and applying Code §§ 1-200 and -201,

> our adoption of English common law, and the rights and benefits of all writs in aid of English common law, ends in 1607 upon the establishment of the first permanent English settlement in America, Jamestown.  From that time forward, the common law we recognize is that which has been developed in Virginia.  More simply stated, English common law and writs in aid of it prior to the settlement of Jamestown (insofar as the same are consistent with the Bill of Rights and Constitution of the Commonwealth and the Acts of Assembly), together with common law developed in Virginia thereafter, constitute the corpus of common law that guides our analysis.

Commonwealth v. Morris, 281 Va. 70, 82, 705 S.E.2d 503, 508-09 (2011).

18

Queen's Bench in the 33rd (1590-91) and 34th (1591-92) years of the reign of Queen Elizabeth I. See Marsh & his Wife, (1790) 78 Eng. Rep. 481 (Q.B.); Cro. Eliz. 225 (holding that "[a]n executor may bring a writ of error to reverse the outlawry for felony of his testator"), continued sub nom. Marshe's Case, (1790) 78 Eng. Rep. 528 (Q.B.); Cro. Eliz. 273 (same).

We conclude that if it is to be the policy in Virginia that a criminal conviction necessarily will abate upon the death of the defendant while an appeal is pending and whether there should be a good cause exception in that policy, the adoption of such a policy and the designation of how and in what court such a determination should be made is more appropriately decided by the legislature, not the courts. See, e.g., Uniwest Constr., Inc. v. Amtech Elevator Servs., 280 Va. 428, 440, 699 S.E.2d 223, 229 (2010)("The public policy of the Commonwealth is determined by the General Assembly [because] it is the responsibility of the legislature, not the judiciary . . . to strike the appropriate balance between competing interests.")(internal quotation marks omitted). For these reasons, we hold that the Court of Appeals erred in applying the abatement doctrine to Bevel's criminal appeal. In light of this holding, the remainder of Bevel's counsel's assignments of error relating

19

to the proceedings in the circuit court and the subsequent review of those proceedings in the Court of Appeals are now moot. Accordingly, we will vacate the judgment of the Court of Appeals in Record Number 102246 (the good cause appeal).

We now turn to the sole issue raised by Bevel's counsel in the merits appeal, which is whether the Court of Appeals erred in dismissing the appeal of Bevel's conviction on its merits as moot on account of his death. As we have already indicated, Bevel's counsel's objection to the dismissal of the appeal by the Court of Appeals was not based upon any contention that the appeal could go forward, but rather was based only on the concern that dismissal of the underlying appeal would result in the Court of Appeals and this Court losing jurisdiction over the issue of abatement. Having resolved the abatement issue, we conclude that under the facts and procedural posture of this case, proceeding on the merits would be a pointless exercise, as there is no party seeking to prosecute the appeal. Accordingly, we will affirm the judgment of the Court of Appeals in Record Number 102323 (the merits appeal) dismissing Bevel's appeal of his conviction as moot.

In doing so, however, we expressly do not address whether in all cases an appeal on the merits of a criminal conviction would become moot on the death of the defendant.

20

It is conceivable that in a case where a criminal conviction could have a significant negative impact on a deceased defendant's estate or the rights of his heirs or another party, the appeal could be prosecuted by a substituted party as was allowed under the common law of England before 1607. But, as neither Bevel's counsel nor the Commonwealth has argued for such a remedy, or even averred that it would be practical in this particular case, we leave that issue to another day.

CONCLUSION

For these reasons, we will vacate the judgment of the Court of Appeals applying the abatement doctrine. We will affirm the judgment of the Court of Appeals, under the specific facts and procedural posture of this case, holding that Bevel's death renders the appeal of his conviction moot.

Record No. 102246 – <u>Vacated</u>.

Record No. 102323 – <u>Affirmed</u>.

21