IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**STATE OF ARIZONA,**
*Appellee,*

*v.*

**RICHARD ALLEN REED,**
*Appellant.*

---

No. CR-19-0059-PR
Filed January 24, 2020

---

Appeal from the Superior Court in Maricopa County
The Honorable Danielle J. Viola, Judge
No. CR2015-117844-001

---

Opinion of the Court of Appeals, Division One
246 Ariz. 138 (App. 2019)
**VACATED AND REMANDED**

---

COUNSEL:

Mark Brnovich, Arizona Attorney General, O.H. Skinner, Solicitor General, Joseph T. Maziarz, Chief Counsel, Jillian B. Francis (argued), Assistant Attorney General, Phoenix, Attorneys for State of Arizona

James J. Haas, Maricopa County Public Defender, Nicholas Podsiadlik (argued), Deputy Public Defender, Phoenix, Attorneys for Richard Allen Reed

Colleen Clase, Phoenix, Attorney for Amicus Curiae Arizona Voice for Crime Victims

Carol Lamoureux (argued), Law Office of Hernandez & Hamilton, PC, Tucson, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

———————————

VICE CHIEF JUSTICE TIMMER authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, JUSTICES BOLICK, GOULD, and LOPEZ joined.\*

———————————

VICE CHIEF JUSTICE TIMMER, Opinion of the Court:

**¶1**        Richard Allen Reed died pending his appeal from a criminal restitution order.  The court of appeals dismissed the appeal pursuant to A.R.S. § 13-106(A), leaving the restitution order intact and enforceable against Reed's estate pursuant to § 13-106(B).

**¶2**        We here decide whether the legislature possessed authority to enact § 13-106, and, if so, whether § 13-106(A) nevertheless violates our state constitution by divesting defendants of their right to appeal.  *See* Ariz. Const. art. 2, § 24.  We conclude that the legislature lacked authority to require the court to dismiss a pending appeal upon a convicted defendant's death (§ 13-106(A)), but possessed authority to prohibit abatement of that defendant's conviction and sentence (§ 13-106(B)).  We vacate the court of appeals' opinion dismissing Reed's appeal and remand to that court for further proceedings.

**BACKGROUND**

**¶3**        The trial court convicted Reed of one count of voyeurism, *see* A.R.S. § 13-1424, and the court of appeals affirmed.  *State v. Reed*, 1 CA-CR 16-0269, 2017 WL 1325647, at *1 ¶ 1 (Ariz. App. Apr. 11, 2017) (mem. decision) ("*Reed I*").  Thereafter, the court ordered Reed to pay $17,949.50 as restitution to the victim, all but $40 of which consisted of the victim's attorney fees.  Reed again appealed, challenging the restitution amount.  *See* A.R.S. § 13-4033(A)(3) (authorizing an appeal from a restitution order).

---

\*        Justice James P. Beene and Justice William G. Montgomery have recused themselves from this matter.

¶4 After the parties had fully briefed the appeal but pending a decision, Reed died. Reed's wife, who serves as personal representative for his estate, moved to intervene or substitute as a party in the appeal. She claimed an interest in challenging the restitution order because it had been recorded as liens against her home and vehicle, both of which she had shared with Reed as community property. The court of appeals denied the motion because the wife did not cite any authority permitting intervention or substitution in a criminal case. *State v. Reed*, 246 Ariz. 138, 140 ¶ 4 n.2 (App. 2019) ("*Reed II*").

¶5 Over Reed's counsel's objection, the court of appeals dismissed the appeal pursuant to § 13-106(A). *Id.* ¶ 1. We accepted review of Reed's petition because it involves the division of authority between this Court and the legislature, an issue of statewide importance.[2]

## DISCUSSION

### I. Legislative authority to enact § 13-106

¶6 Arizona courts have traditionally applied the common law doctrine of abatement *ab initio* to discontinue an appeal and set aside a defendant's conviction and sentence when the defendant dies pending appeal of the conviction and sentence. *See State v. Glassel*, 233 Ariz. 353, 353 ¶ 1 (2013); *State v. Griffin*, 121 Ariz. 538, 539 (1979); *see also Commonwealth v. Hernandez*, 118 N.E.3d 107, 116 (Mass. 2019) (noting a plurality of state courts and the federal courts follow the abatement *ab initio* doctrine, although adherence is waning in state courts). We have held that abatement is justified because the defendant's death satisfies the state's interest in protecting society, the defendant can no longer be punished, and collecting fines and restitution and forfeiting property only serves to punish innocent third parties. *Griffin*, 121 Ariz. at 539. After a defendant's conviction and sentence have been affirmed, however, they do not abate if the defendant dies pending other actions, such as discretionary appeals and post-conviction relief proceedings. *See Dove v. United States*, 423 U.S. 325 (1976); *Glassel*, 233 Ariz. at 355 ¶ 11. In those circumstances, the pending matter is dismissed as moot. *See Dove*, 423 U.S. at 325.

---

[2] Although Reed has died, for ease of reference we refer to "Reed" rather than his counsel throughout this Opinion as the person making arguments to this Court.

¶7 Our courts, however, have not decided whether a restitution order abates if, after the conviction and sentence have been affirmed, a defendant dies pending a separate appeal from the restitution order. (Whether Reed's conviction and sentence should be abated is not at issue because they were affirmed in *Reed I* before his death.) Although the court of appeals concluded in *Matter of Estate of Vigliotto*, 178 Ariz. 67, 69–70 (App. 1993), that a restitution order survives a defendant's death, that restitution order was not then pending appeal.

¶8 In 2014, the legislature enacted § 13-106, eliminating the abatement *ab initio* doctrine but requiring the court to dismiss a pending appeal or post-conviction relief proceeding upon a convicted defendant's death:

> A. On a convicted defendant's death, the court shall dismiss any pending appeal or postconviction proceeding.
>
> B. A convicted defendant's death does not abate the defendant's criminal conviction or sentence of imprisonment or any restitution, fine or assessment imposed by the sentencing court.

Section 13-106 is consistent with the courts' disposition of post-conviction relief proceedings when a convicted defendant dies pending resolution. *See Glassel*, 233 Ariz. at 355 ¶ 11. But the statute irreconcilably conflicts with our courts' adherence to the abatement *ab initio* doctrine when a convicted defendant dies pending appeal of the conviction and sentence. *See Griffin*, 121 Ariz. at 539.

¶9 Reed argues the legislature infringed upon this Court's appellate jurisdiction and usurped its constitutionally granted rulemaking authority by enacting § 13-106, thereby violating separation-of-powers principles and rendering the provision unconstitutional. *See* Ariz. Const. art. 3 (providing that except as provided in the constitution, the three departments of government "shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others"); *State ex rel. Napolitano v. Brown*, 194 Ariz. 340, 342 ¶ 6 (1999) ("[U]nder the traditional separation of powers doctrine, the legislature lacks authority to enact a statute if it conflicts with or tends to engulf this court's constitutionally vested rulemaking authority." (citation omitted) (internal quotation marks omitted)).

**¶10**      The Arizona Constitution vests this Court with appellate jurisdiction and grants it "[p]ower to make rules relative to all procedural matters in any court." Ariz. Const. art. 6, § 5(3), (5). The legislature possesses authority to enact substantive laws, *see State v. Hansen*, 215 Ariz. 287, 289 ¶¶ 9–10 (2007), but may also enact "procedural laws to define, implement, preserve and protect the rights guaranteed to victims" by the Victim's Bill of Rights, Ariz. Const. art. 2, § 2.1 ("VBR"). VBR § 2.1(D). Also, we will recognize "reasonable and workable" procedural laws if they supplement rather than conflict with court procedures. *See Seisinger v. Siebel*, 220 Ariz. 85, 89 ¶ 8 (2009) (citation omitted); *see also State v. Forde*, 233 Ariz. 543, 576 ¶ 146 (2014) (acknowledging that court procedures emanate from court rules and caselaw). In the event of a conflict, the court procedure prevails. *See Seisinger*, 220 Ariz. at 89 ¶ 8.

**¶11**      As previously mentioned, § 13-106 is consistent with the courts' disposition of post-conviction relief proceedings pending at the time a convicted defendant dies. *See Glassel*, 233 Ariz. at 355 ¶ 11. Thus, even if the statute is procedural and not authorized by the VBR, it remains valid to the extent it concerns post-conviction relief proceedings. *See Seisinger*, 220 Ariz. at 89 ¶ 8. But because § 13-106 is inconsistent with how courts process appeals upon a convicted defendant's death, we must decide whether the legislature possessed authority to enact § 13-106 as it concerns appeals. Resolution of this issue depends on whether the provision is a procedural or substantive law and, if the former, whether the legislature was nevertheless authorized to enact it under the VBR.

**¶12**      We review Reed's challenge to § 13-106 de novo as an issue of law, *see State v. Acuna Valenzuela*, 245 Ariz. 197, 211 ¶ 34 (2018), and start with the strong presumption the statute is constitutional, *see State v. Tocco*, 156 Ariz. 116, 119 (1988). Reed bears the burden of showing that the legislature infringed this Court's rulemaking authority by enacting § 13-106. *See State v. Casey*, 205 Ariz. 359, 362 ¶ 11 (2003).

### A. Substantive law vs. procedural rule

**¶13**      "[T]he precise dividing line between substance and procedure has proven elusive." *Seisinger*, 220 Ariz. at 92 ¶ 29 (citation omitted) (internal quotation marks omitted). We draw that line by applying these definitions:

>Uniformly, the substantive law is that part of the law which creates, defines and regulates rights; whereas the adjective, remedial or procedural law is that which prescribes the method of enforcing the right or obtaining redress for its invasion. It is often said the adjective law pertains to and prescribes the practice, method, procedure or legal machinery by which the substantive law is enforced or made effective.

*State v. Birmingham*, 96 Ariz. 109, 110 (1964); *see also Seisinger*, 220 Ariz. at 92 ¶ 29. In doing so, we recognize that both substantive and procedural rights can be "important" or "substantial," *see Heat Pump Equip. Co. v. Glen Alden Corp.*, 93 Ariz. 361, 364 (1963), and look to "the true function of the statute" at issue rather than relying on labels, *see Seisinger*, 220 Ariz. at 93 ¶ 31.

¶14        Section 13-106(A) implicates an accused's constitutional right "to appeal in all cases." *See* Ariz. Const. art. 2, § 24. A convicted defendant's right to appeal is substantive, but "the manner in which the right may be exercised is subject to control through the use of procedural rules." *Birmingham*, 96 Ariz. at 110; *see also Heat Pump Equip. Co.*, 93 Ariz. at 364 (describing "procedure" as "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them" (citation omitted)).

¶15        The State argues § 13-106(A) is substantive because it does not "enforce" the constitutional right to appeal but instead reflects a legislative choice that "a deceased defendant is [not] 'entitled' to a right to appeal in the first instance." We disagree. Section 13-106(A) does not define who is entitled to exercise the right to appeal; it presupposes its exercise by a convicted defendant who subsequently dies. Regardless, the constitution defines who is entitled to appeal—"the accused"—and the legislature lacks authority to redefine who may exercise this right. *See* Ariz. Const. art. 2, § 24; *Seisinger*, 220 Ariz. at 92 ¶ 26 ("The legislature has plenary power to deal with any topic unless otherwise restrained by the Constitution.").

¶16        Functionally, § 13-106(A) directs how a court must process a pending appeal upon the occurrence of an event—here, a convicted defendant's death. The court's disposition of the appeal, whether a merits decision or a dismissal, is the last cog in the "legal machinery" enforcing

the substantive right to appeal. *See Birmingham*, 96 Ariz. at 110; *see also Wilson v. Ellis*, 176 Ariz. 121, 123–24 (1993) (stating that the right to appeal triggers appellate review and "some form of appellate relief"). Neither the substance of the disposition nor the rules that govern it diminish or augment the substantive right to appellate review. *See* Ariz. R. Crim. P. 31.19(c)–(d) (setting forth disposition alternatives); *State v. Superior Court*, 154 Ariz. 574, 576 (1987) (stating that court-made procedural rules "may not diminish or augment substantive rights" (quoting *Birmingham*, 95 Ariz. at 316)). The disposition of an appeal is a matter of court procedure, and the legislature has no authority to direct the courts in how they adjudicate appeals. *See Ariz. Podiatry Ass'n v. Dir. of Ins.*, 101 Ariz. 544, 548 (1966) ("If a right of appeal is granted, then the ultimate right to determine the appeal rests in the supreme court by virtue of Article 6, § 5, and the procedure by which an appeal is perfected shall be provided by the supreme court.").

¶17 Even assuming the legislature can regulate the constitutional right to appeal by terminating that right upon a convicted defendant's death, § 13-106(A)'s directive to dismiss a pending appeal remains a matter of procedure. Termination of the right would not itself constitute a disposition of the pending appeal; the court would still be required to process the appeal, and, as explained, the legislature lacks authority to direct that process. And because our courts are not constrained to decide only appeals with active controversies, the court is not required to dismiss an appeal even if mooted by events like an appellant's death. *See In re Leon G.*, 204 Ariz. 15, 17 ¶ 2 n.1 (2002) ("Generally, this court will not examine waived or moot questions" but will do so "for issues that are of great public importance or likely to reoccur"); *State v. Superior Court*, 86 Ariz. 231, 234 (1959) ("When the problem which has, due to supervening events, become moot is one of considerable public importance or the principle involved therein is a continuing one, the court may, in its discretion, decide the issues of law involved."); *Corbin v. Rodgers*, 53 Ariz. 35, 39 (1938) (to same effect). Consequently, § 13-106(A) is a procedural rule and violates Ariz. Const. art. 3 (separation of powers) unless VBR § 2.1(D) authorized its enactment.

¶18 We reach a different conclusion concerning § 13-106(B). Whether a conviction, sentence, restitution order, or fine should stand or abate when a convicted defendant dies pending appeal is a policy matter affecting competing interests and rights held by victims, the state, the defendant's family, and society. The legislature's abolition of the abatement *ab initio* doctrine regulates the primacy of those interests and rights, making § 13-106(B) a substantive law. *See Birmingham*, 96 Ariz. at

110; *see also People v. Robinson*, 719 N.E.2d 662, 664 (Ill. 1999) (acknowledging that general assembly could abolish abatement *ab initio* doctrine); *Bevel v. Commonwealth*, 717 S.E.2d 789, 795 (Va. 2011) (leaving decision whether to adopt abatement *ab initio* doctrine and any exceptions to the legislature as a matter of policy).

**¶19**       In sum, the part of § 13-106(A) addressing post-conviction relief proceedings is valid because it is consistent with court procedures. *See supra* ¶ 11.  But § 13-106(A) violates Ariz. Const. art. 3 (separation of powers) as it concerns appeals and is therefore ineffective unless authorized by VBR § 2.1(D).  Conversely, § 13-106(B) is a substantive law that was within the legislature's authority to enact.

## B.  Authority to enact § 13-106(A) under VBR § 2.1(D)

**¶20**       The legislature's rulemaking authority under the VBR is restricted.  It "extends only so far as necessary to protect rights *created by* the VBR" that are "unique and peculiar to crime victims."  *Brown*, 194 Ariz. at 343 ¶¶ 11–12 (citation omitted); *see also Champlin v. Sargeant*, 192 Ariz. 371, 373 n.2 (1998) (stating that the VBR "did not transfer to the legislature the power to enact all procedural and evidentiary rules in criminal cases"); *Slayton v. Shumway*, 166 Ariz. 87, 92 (1990) (adopting VBR proponents' view that legislative rulemaking authority extends only so far as necessary to protect victims' VBR-granted rights and does not otherwise infringe the Court's constitutionally granted rulemaking authority).

**¶21**       We have previously identified VBR § 2.1(A)(1)–(9) as creating rights "unique and peculiar" to victims:

> Section 2.1.  (A) To preserve and protect victims' rights to justice and due process, a victim of crime has a right:
>
> 1.  To be treated with fairness, respect, and dignity, and to be free from intimidation, harassment, or abuse, throughout the criminal justice process.
>
> 2.  To be informed, upon request, when the accused or convicted person is released from custody or has escaped.

3. To be present at and, upon request, to be informed of all criminal proceedings where the defendant has the right to be present.

4. To be heard at any proceeding involving a post-arrest release decision, a negotiated plea, and sentencing.

5. To refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant.

6. To confer with the prosecution, after the crime against the victim has been charged, before trial or before any disposition of the case and to be informed of the disposition.

7. To read pre-sentence reports relating to the crime against the victim when they are available to the defendant.

8. To receive prompt restitution from the person or persons convicted of the criminal conduct that caused the victim's loss or injury.

9. To be heard at any proceeding when any post-conviction release from confinement is being considered.

*See Brown*, 194 Ariz. at 343 ¶ 12. We add subsection (A)(12), the right "[t]o be informed of victims' constitutional rights," to that list. Thus, the legislature exercised its VBR-granted rulemaking authority here if § 13-106(A) "define[s], implement[s], preserve[s], [or] protect[s]" specific rights unique and peculiar to crime victims, as created by VBR § 2.1(A)(1)–(9) or (12). *See* VBR § 2.1(D); *see also Hansen*, 21 Ariz. at 290 ¶ 12; *Brown*, 194 Ariz. at 343 ¶ 11.

**¶22**        The court of appeals concluded that VBR § 2.1(D) authorized the legislature to enact § 13-106(A). *Reed II*, 246 Ariz. at 144 ¶ 22. The court relied on this Court's decision in *Hansen*, which held that the legislature validly exercised VBR rulemaking authority by enacting A.R.S. § 13-804(D) to preclude stays of restitution payments pending appeal. *Id.* ¶ 21 (citing *Hansen*, 215 Ariz. at 289 ¶ 8). The *Hansen* Court, in turn, relied on *Brown*, which concluded the legislature lacked VBR rulemaking authority to impose statutory time limits for filing post-conviction relief petitions.

*Hansen*, 215 Ariz. at 290 ¶ 13 (citing *Brown*, 194 Ariz. at 341 ¶¶ 1–2). In upholding § 13-804(D), *Hansen* applied three considerations culled from *Brown*: (1) "[m]ost importantly," whether the statute "affects rights unique and specific to victims" as enumerated in the VBR; (2) whether the legislature intended to exercise its VBR rulemaking authority; and (3) whether the statute actually furthers VBR-created rights that are unique and peculiar to victims. *See id.* at 290–91 ¶¶ 13–16. The court of appeals here summarily applied these considerations to uphold § 13-106(A) as within the legislature's VBR-granted rulemaking authority. *Reed II*, 246 Ariz. at 144 ¶ 22.

**¶23**　　　　Applying the *Brown*/*Hansen* considerations, we conclude that VBR § 2.1(D) does not authorize enactment of § 13-106(A). First, and most importantly, § 13-106(A) does not affect rights "unique and specific" to victims. The State argues that § 13-106(A) affects victims' rights "to a speedy trial or disposition and prompt and final conclusion of the case after conviction and sentence," as established by VBR § 2.1(A)(10). As we explained in *Brown*, however, because this right "neither creates a right nor defines a right peculiar and unique to victims," § 2.1(A)(10) "cannot serve as a source of authority for the legislature to usurp this court's rulemaking authority." *Brown*, 194 Ariz. at 343–44 ¶¶ 12–13; *see also id.* ¶ 12 ("[T]he judicial system as a whole is vitally interested in advancing the goal of prompt, fair resolution of all actions, including criminal cases, for the benefit of all participants as well as victims.").

**¶24**　　　　We also disagree with the State that § 13-106(A) preserves and protects victims' rights as guaranteed by VBR §§ 2.1(A)(1) & (8). Subsection (A)(1)'s requirement that victims "be treated with fairness, respect, and dignity, and . . . be free from intimidation, harassment, or abuse, throughout the criminal justice process" concerns treatment of victims in the criminal justice process; it does not create rights to any particular disposition. Subsection (A)(8)'s declaration that victims must "receive prompt restitution from the person or persons convicted of the criminal conduct that caused the victim's loss or injury" is unique and peculiar to victims. *See Hansen*, 215 Ariz. at 290 ¶ 14; *Brown*, 194 Ariz. at 343 ¶ 12. But this right contemplates the entry of a restitution order that is subject to appellate scrutiny, which may result in reversal or modification of the order. Because subsection (A)(8) does not guarantee victims any particular appellate disposition, § 13-106(A)'s required disposition does not affect a victim's right to payment of prompt restitution.

¶25 Second, we are not persuaded that the legislature intended to exercise its VBR-granted rulemaking authority by enacting § 13-106(A). The legislature nowhere stated it was exercising its authority under VBR § 2.1(D) to enact any part of § 13-106. And such an intent is not implied by the text of § 13-106(A), as it requires dismissal of any pending criminal appeal upon a convicted defendant's death, not just dismissal of an appeal involving a crime perpetrated against a victim. The only explicit mention of victims in the legislative history came from the state solicitor general's testimony during a committee hearing that abatement nullifies victims' rights to finality under VBR § 2.1(A)(10). Also, bill summaries for the measure cited *Griffin* and *Glassel* in explaining the abatement doctrine. Because *Glassel* "noted concerns by amicus curiae filed on behalf of victims," the court of appeals deduced that the legislature intended to exercise VBR-granted rulemaking authority. *See Reed II*, 246 Ariz. at 144 ¶ 22. But even assuming the solicitor general's comments and the *Glassel* citation suggest the legislature intended to exercise VBR-granted rulemaking authority to eliminate abatement (subsection (B)), they do not similarly support a conclusion the legislature intended to exercise that authority to require dismissal of appeals upon a convicted defendant's death (subsection (A)).

¶26 Third, § 13-106(A) does not further any VBR-created rights that are unique and peculiar to victims. Just as § 13-106(A) does not affect such rights, *see supra* ¶¶ 23–24, neither does it further them. Notably, if the court decides the merits of an appeal after the convicted defendant's death, the victim would be in the same position she would have been had the defendant lived.

¶27 In sum, VBR § 2.1(D) did not authorize the legislature to enact § 13-106(A) because that provision does not "define, implement, preserve [or] protect" VBR-created rights that are unique and peculiar to victims. In light of our conclusion, we need not address Reed's alternate arguments concerning the validity of § 13-106(A).

## II. Disposition

¶28 Our prior application of the abatement *ab initio* doctrine abated the conviction, sentence (including any restitution order and fines), and appeal. Because § 13-106(B) precludes abatement of the conviction and sentence, we must determine anew how to process an appeal when a convicted defendant dies pending disposition. Our options are dismissing

the appeal as moot, deciding it on the merits, or implementing some variation of both approaches. *See State v. Carlin*, 249 P.3d 752, 759–61 (Alaska 2011) (outlining different options); *Hernandez*, 118 N.E.3d at 113–16 (same); *State v. Burrell*, 837 N.W.2d 459, 463–67 (Minn. 2013) (same).

¶29        Decisions from the supreme courts in Kansas and Alaska provide some guidance. In *State v. Hollister*, 329 P.3d 1220 (Kan. 2014), the defendant was convicted of capital murder and died pending his direct appeal. *Id.* at 1222. His counsel nevertheless urged the court to decide the appeal, pointing out that Kansas courts do not abate appeals due to death. *Id.* at 1225; *see also id.* ("In Kansas the death of a defendant does not abate his direct appeal as it is in the interest of the public that the issues raised on appeal be adjudicated upon the merits." (citation omitted)). The court held, however, that "this nonabatement rule does not require us to consider all issues in an appeal." *Id.* at 1222. It directed appellate courts to address only issues that "(1) [are] of statewide interest and of the nature that public policy demands a decision, such as those issues that would exonerate the defendant; (2) remain[] a real controversy; or (3) [are] capable of repetition." *Id.* at 1227. The court reasoned that this approach would align with its treatment of issues rendered moot for reasons other than death. *Id.* at 1226. It then found that only the defendant's challenge to the sufficiency of evidence supporting the conviction satisfied this test, decided that issue, and dismissed the remaining issues as moot. *Id.* at 1227–29.

¶30        In *Carlin*, the Alaska Supreme Court overruled a prior case that had adopted the abatement *ab initio* doctrine. 249 P.3d at 754. The court held that when a convicted defendant dies pending direct appeal or after the supreme court has granted a petition for hearing, the conviction will stand and the proceeding will be dismissed, unless the defendant's personal representative substitutes in the matter. *Id.* at 754, 766. The court chose this "middle path" to accommodate victims' rights and a defendant's right to appeal. *Id.* at 762. The court did not view criminal appeals as necessarily mooted upon a defendant's death. It concluded that such appeals may remain a "present, live controversy," particularly if restitution, with its consequences for the defendant's estate, is at issue. *Id.* at 764. The court also noted that both the victim and the community remain interested in condemning the true offender. *Id.*; *see also id.* (quoting *State v. McDonald*, 424 N.W.2d 411, 415 (Wis. 1988) (Heffernan, C.J., concurring) ("[The defendant] did not take the potential errors of our justice system into the grave with him . . . . [T]hese errors remain behind to worry society at large, because such important collateral matters as inheritance, insurance benefit

distribution, and distribution of various property may wind up being conclusively determined without benefit of a review for error in the potentially controlling criminal action.")).

¶31        We take elements from both *Hollister* and *Carlin* to decide how to process a pending appeal of a restitution order upon a convicted defendant's death:

(1) A court should only decide issues that (a) are of statewide interest, (b) remain a controversy, or (c) are capable of repetition so that court guidance would assist parties and the courts in future cases.  *See Hollister*, 329 P.3d at 1227.

(2) The court may permit a deceased defendant's estate or other interested party to intervene in the appeal.  *See* Ariz. R. Crim. P. 31.19(b) ("An appellate court may issue any order during the course of an appeal that it deems necessary or appropriate to facilitate or expedite the appeal's consideration.").

(3) A court must dismiss an appeal if the defendant dies before the matter has been briefed, his counsel does not submit briefing, and neither the defendant's estate nor an interested party moves to intervene in the appeal.

¶32        This approach respects both victims' rights and interests held by society and the defendant's family and estate.  Notably, excepting dismissal of the appeal, a victim is in the same position as if the defendant had lived until a decision in his appeal.  Because different considerations exist when a defendant dies pending appeal of a conviction and sentence, which have not been addressed in this case, we leave for another case how such appeals should be processed.

¶33        Turning to this case, the only issue on appeal is whether the restitution amount is correct.  This remains a controversy with a real-world impact on Reed's wife, who must pay the restitution amount to remove the liens from her home and vehicle.  The appeal has been briefed, and only a decision remains to be made.  The victim's rights would not be infringed by a decision on the merits, as she never possessed a right to avoid such a decision.  The court of appeals should decide the merits of the appeal.

**CONCLUSION**

¶**34**　　　　We vacate the court of appeals' opinion and remand for a decision on the merits.