IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ELENA CHRISTINA TAGGE, *Appellant.*

STATE OF ARIZONA, *Appellee,*

*v.*

MATTHEW CARL TAGGE, *Appellant.*

No. 1 CA-CR 16-0759
1 CA-CR 16-0785

FILED 5-9-2019

Appeal from the Superior Court in Maricopa County
No.  CR2015-113021-001
CR2015-030181-001
The Honorable Michael D. Gordon, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist, III
*Counsel for Appellee*

Bain & Lauritano, PLC, Glendale
By Sheri M. Lauritano
*Counsel for Appellant Elena Tagge*

Maricopa County Public Defender's Office, Phoenix
By Nicholaus Podsiadlik
*Counsel for Appellant Matthew Tagge*

---

**OPINION**

Judge Kent E. Cattani delivered the opinion of the Court, in which Presiding Judge Diane M. Johnsen joined. Judge Peter B. Swann specially concurred.

---

**C A T T A N I**, Judge:

¶1 Matthew and Elena Tagge appeal their convictions for illegal possession or use of marijuana and drug paraphernalia. The Tagges maintain that, because they held cards entitling them to possess and use marijuana under the Arizona Medical Marijuana Act ("AMMA"), they were immune from prosecution. We hold to the contrary that, because immunity under the AMMA does not extend to smoking marijuana in a public place, the Tagges could be prosecuted for doing so in their car in a public parking lot. Accordingly, and for reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 The facts are undisputed. Bound for a music festival in Mesa one afternoon, the Tagges parked in a commercial lot near the concert venue. The lot was owned by the City of Mesa and had been leased to a radio station for parking for the event. The Tagges pulled up next to two undercover Mesa police officers, who watched as the Tagges sat in their car and smoked marijuana from a pipe they passed between them. Although the windows of the Tagges' car were up, police saw smoke coming from the pipe, ordered them out of the car and seized the pipe, along with approximately one gram of marijuana.

¶3 Each of the Tagges was a "qualifying patient" under the AMMA. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 36-2801(13), -2811. At trial, they argued that they were immune from prosecution under § 36-2811, which generally immunizes AMMA cardholders' marijuana use, subject to several

exceptions, including one at issue in this case: smoking in a public place. *See* A.R.S. § 36-2802(C)(2). The superior court rejected the Tagges' argument, finding that although they were inside a closed car, they were in a public place and were not entitled to immunity. After a bench trial, the court convicted them of misdemeanor marijuana and paraphernalia offenses and imposed six months' unsupervised probation. The Tagges each filed a timely appeal.

## DISCUSSION

¶4        By law, the State may not subject a qualifying patient to arrest or prosecution for "use of marijuana pursuant to [the AMMA]." A.R.S. § 36-2811(B)(1). This protection "broadly immunizes qualified patients, carving out only narrow exceptions from its otherwise sweeping grant of immunity." *Reed-Kaliher v. Hoggatt*, 237 Ariz. 119, 122, ¶ 8 (2015). Among the exceptions: A qualifying patient may not *possess or use* marijuana "[o]n a school bus," "[o]n the grounds of any preschool or primary or secondary school," or "[i]n any correctional facility." A.R.S. § 36-2802(B). And a qualifying patient may not *smoke* marijuana "[o]n any form of public transportation" or "[i]n any public place." A.R.S. § 36-2802(C). The dispositive issue here is whether the "public place" exception to immunity applies to smoking inside a private vehicle in a public parking lot.

¶5        This court reviews questions of statutory interpretation de novo. *Reed-Kaliher*, 237 Ariz. at 122, ¶ 6. In interpreting statutes, we give special care "to give effect to every clause and word." *Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 196, ¶ 16 (2016). "[W]e look to the statute as a whole, and construe together all parts of the statute relating to the same subject." *Ariz. Health Care Cost Containment Sys. v. Bentley*, 187 Ariz. 229, 232 (App. 1996); *see J.D. v. Hegyi*, 236 Ariz. 39, 41, ¶ 6 (2014) ("Words in statutes . . . cannot be read in isolation from the context in which they are used."). When a term in a statute may have differing meanings, we "consider[] secondary factors, such as the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose." *Premier Physicians*, 240 Ariz. at 195, ¶ 9.

¶6        The Tagges first argue that the parking lot itself was not a public place within the meaning of the AMMA. They urge us to adopt the limited definition of "public place" found in the Smoke-Free Arizona Act ("SFAA"), which includes only an "*enclosed* area to which the public is invited or in which the public is permitted." A.R.S. § 36-601.01(A)(9) (emphasis added). The Tagges assert that because both the SFAA and the AMMA appear in Title 36 of the Arizona Revised Statutes, we must read

the two *in pari materia* so that the SFAA's definition of "public place" would apply to every use of the phrase in Title 36.

¶7 The Tagges' argument is unavailing because the SFAA expressly applies only to tobacco products, not marijuana. *See* A.R.S. § 36-601.01(A)(11) (defining "[s]moking" by reference to "any lighted tobacco product"). The AMMA drafters could have expressly incorporated the public place definition from the SFAA, but they did not do so. That the two statutes are in the same title is insufficient to warrant application of the SFAA's definition to the AMMA given the distinct subject matters and the different purposes of the two acts. *See Moreno v. Jones*, 213 Ariz. 94, 99, ¶ 28 (2006) (*in pari materia* statutes "relate to the same subject or have the same general purpose") (citation omitted). Accordingly, we hold that a public place under the AMMA is not limited to enclosed areas. Instead, a public place is simply "a place open to or frequented by the general public," *see State v. Whitaker*, 164 Ariz. 359, 362 (App. 1990), and the city-owned parking lot in this case meets that definition. *See Florida v. White*, 526 U.S. 559, 566 (1999) (employer's parking lot is a "public area" for purposes of a Fourth Amendment challenge); *People v. Strider*, 177 Cal. App. 4th 1393, 1402 (2009) (parking lot is a "public place" under statute criminalizing carrying loaded firearm in a public place); *Dornbusch v. State*, 262 S.W.3d 432, 437 (Tex. Ct. App. 2008) (parking lot is akin to public roadway in interpreting "public place" element of driving-under-influence statute).[1]

¶8 The Tagges counter that the parking lot was not a public place within the meaning of the statute because, although municipally owned, the lot was leased to a radio station, which in turn charged concert-goers to park there. The Tagges do not cite and we are unaware of any authority for the proposition that a fee requirement for entering or using a space that otherwise is open to everyone renders a parking lot a non-public place, and we hold that the parking lot in this case was a public place for purposes of the AMMA.

¶9 The Tagges also argue that, even if the parking lot were considered to be a public place, they nevertheless were not subject to prosecution because they did not smoke marijuana in the open, but instead

---

[1] We note that the Department of Health Services issued regulations defining "public place" under the AMMA to include "parking lots." Ariz. Admin. Code R9-17-101(24)(xiv). The superior court in this case, however, ruled that the department lacked authority to issue the regulation and held it invalid. The State did not cross-appeal from that ruling, *see* A.R.S. § 13-4032(3), and does not argue that the regulation bears on this appeal.

did so inside a closed private vehicle. But the interior of a vehicle is not a separate place distinct from the location in which the vehicle is found. The expedient of being enclosed in a vehicle parked in a public place does not, without more, remove a person from the public place. Criminal trespass, for example, is not decriminalized if a trespasser's unauthorized presence on a property is inside a vehicle. Simply put, a location—including a public place—does not change its character when a person is present in a vehicle, rather than on foot.

¶10        Although this is a case of first impression in Arizona, our conclusion that immunity under the AMMA does not extend to smoking in a private vehicle in a public parking lot is consistent with that reached by the Michigan Court of Appeals in *People v. Carlton*, 880 N.W.2d 803 (Mich. Ct. App. 2015). Construing a similarly worded medical-marijuana statute, the Michigan court concluded that a qualifying patient cited for smoking in his car in a casino parking lot was not immune from prosecution. *Id.* at 805–08. Noting that the statute withdrew immunity for smoking in "any public place" (but did not condition immunity on whether the act was done "in public"), the court held that immunity from prosecution for smoking marijuana does not extend "to [qualifying patients] who smoke medical marijuana in a parking lot that is open to use by the general public, even when smoking inside a privately owned vehicle, and even if the person's smoking is not directly detectable by the members of the general public." *Id.* at 807–10. Although the court acknowledged that the interior of a privately owned car can be private, it ultimately rejected the notion that a vehicle's interior could be a "place" whose public or private character would determine immunity under the statute. *Id.* at 809–10.

¶11        Like the Michigan court in *Carlton*, we acknowledge that, in general, motorists in private vehicles enjoy privacy interests entitled to constitutional protection. *See id.*; *see also Arizona v. Gant*, 556 U.S. 332, 345 (2009). But we agree with the Michigan court that applicability of the "public place" exception in the statute hinges on the character of the place, not on whether the qualifying patient takes steps to conceal the act or limit its effect on others within that place.

¶12        The Tagges alternatively argue that our statutory analysis ignores a separate prong of § 36-2802(C), which withdraws immunity for smoking marijuana "[o]n any form of public transportation." In their view, the statute's express withdrawal of immunity for smoking on *public* transportation implicitly preserves immunity for smoking inside *private* transportation. The Tagges suggest that, if a patient's immunity when smoking marijuana in a means of private transportation hinges on the

location of the means of private transportation, the statute's separate reference to "public transportation" would be redundant because "any form of public transportation" necessarily will be located in a "public place," i.e., a roadway, railway, bus station, or parking lot.

¶13 We disagree that our interpretation of the statute renders the "public place" and "public transportation" provisions redundant. The statute withdraws immunity for smoking in any public place, as well as for smoking on any form of public transportation (without regard to whether the public transportation is in a public or private place). Although public transportation vehicles usually travel in public places, they sometimes venture into otherwise non-public spaces. For example, a public bus may transport people over private property. Similarly, a bus may be parked in a restricted area of a bus depot or may undergo mechanical work in a private garage. In any of these scenarios, under the express language of the statute, smoking marijuana is not permitted on the bus, even though it is located in a non-public place. Thus, although the "public place" and "public transportation" restrictions overlap to a significant extent, it is not necessary to read the "public transportation" provision as an implicit exclusion of "private transportation" to give it meaning.

¶14 Furthermore, accepting the Tagges' view that the statute implicitly allows smoking in any form of private transportation would lead to anomalous results. Such an interpretation would allow an individual to smoke marijuana in the open, for example in a public park, by the simple expedient of perching on a motorcycle or some other form of private transportation. To avoid this absurd result, the court would presumably have to write in a windows-up requirement in addition to finding an implicit private-vehicle exception, all based on the statute's reference to public transportation. We decline to judicially amend the AMMA to reach so far beyond the text of the statute, and we conclude that the public transportation and public place restrictions in the AMMA are complementary and not impermissibly redundant.

## CONCLUSION

¶15 The Tagges, even though qualifying patients under the AMMA, lost their immunity from prosecution for marijuana and paraphernalia-related offenses because they were smoking marijuana in a public place. Although the Tagges could have consumed marijuana in the same location by other means, they ceded their immunity by *smoking* marijuana in a public place. We thus affirm their convictions.

**S W A N N**, Judge, specially concurring:

¶16        I agree with the majority opinion, but I write separately to note that it should not be overread. The determining factor in this appeal is the question whether the Tagges smoked marijuana in a "public place." Though a person's mere presence in a vehicle is not by itself sufficient to *remove* him or her from the public place in which the vehicle is located, the fact that a person is in a mobile enclosure does not necessarily mean the person is in a "public place."

¶17        Our holding in this case does not extend, for example, to a patient who is in a traditionally private place, such as the closed bedroom of a mobile home lawfully parked in a public lot. The appropriate inquiry centers on the reasonable expectation of privacy that a patient has in the location where the smoking takes place—the greater the expectation of privacy, the less "public" the place. And though I agree that the exposed passenger compartment of a car does not carry with it a reasonable expectation of privacy when smoking marijuana, other circumstances involving a different type of vehicle located in a public place might dictate a different result.



AMY M. WOOD • Clerk of the Court
FILED: AA