IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA,
*Appellee,*

*v.*

SHANE ALAN RAFFAELE,
*Appellant.*

No. 1 CA-CR 19-0226

FILED 8-6-2020

Appeal from the Superior Court in Maricopa County
No.  CR2013-437445-001
The Honorable Mark H. Brain, Judge
The Honorable Jay R. Adleman, Judge

**AFFIRMED IN PART, VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Scott L. Boncoskey
*Counsel for Appellant*

## OPINION

Judge Joshua D. Rogers[1] delivered the opinion of the Court, in which Presiding Judge Samuel A. Thumma and Judge Randall M. Howe joined.

**R O G E R S**, Judge:

¶1        Shane Alan Raffaele appeals from his conviction and sentence for transportation of marijuana for sale in an amount over two pounds. Raffaele asserts that the superior court erred by (1) denying his motion to suppress, (2) denying his request for a continuance so that he could retain counsel, and (3) imposing a two-dollar "penalty assessment." We ordered supplemental briefing to address whether we have jurisdiction over this appeal, given that Raffaele absconded. *See* A.R.S. § 13-4033(C). As set forth below, we find that we have jurisdiction over this appeal because A.R.S. § 13-4033(C) requires the State to affirmatively show in the superior court that a defendant has knowingly, voluntarily, and intelligently waived his or her right to an appeal. Because the superior court made no findings of a knowing, voluntary, and intelligent waiver, we have jurisdiction to hear the appeal. On the merits, we affirm Raffaele's conviction and sentence but vacate the two-dollar penalty assessment.

## FACTS AND PROCEDURAL BACKGROUND

¶2        In August 2013, a Department of Public Safety officer saw what appeared to be a rental car with California plates. Because the driver's posture "appeared to be rigid" and he did not acknowledge the officer's presence, the officer followed the car. When the officer saw the driver commit a lane change violation, he pulled the car over. The officer approached the open passenger's side window and asked the driver to get out of the car with his license. The driver, Raffaele, complied. Away from the road, the officer introduced himself, explained the reason for the traffic stop, and stated that he would only be issuing a warning.

¶3        The officer noticed that although Raffaele was polite and did not have any issues communicating, he had some facial tremors and

---

[1]        The Honorable Joshua Rogers, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article 6, Section 3 of the Arizona Constitution.

appeared nervous. Raffaele explained that he was coming back from a day trip to California after dropping off a former coworker.

¶4            After confirming that he was driving a rental car, Raffaele gave the officer permission to retrieve rental documents from the center console of the car. The officer then went into the car and smelled marijuana. The officer, however, later testified that he could not tell if he smelled burnt or unburnt marijuana. The officer then went to his patrol car, requested backup, and printed a written warning.

¶5            The officer gave Raffaele the warning and continued to ask him about his trip to California. During their discussion, Raffaele explained that his car was being repaired and that the car he was driving was rented in his mother's name because he did not have a credit card. The officer asked Raffaele when he last used marijuana, both generally and in the car. Raffaele responded that he last smoked two days earlier in the car and presented his medical marijuana card. The officer explained that although Raffaele had a medical marijuana card, the rental car would still need to be searched to ensure that any marijuana in the car was within the regulated amount.

¶6            The officer and Raffaele continued to talk while they waited for a second officer to arrive. A short time later, Raffaele admitted that he was transporting about seven pounds of marijuana from a California dispensary. Given this admission, the officer arrested Raffaele, searched the car, and found ten pounds of marijuana in the trunk.

¶7            Raffaele was charged with one count of illegally conducting a criminal enterprise and one count of transportation of marijuana for sale. During a pretrial proceeding, the court informed Raffaele that if he missed any of his court dates "a warrant [could] be issued for [his] arrest. . . . The case [could] also go to trial without [him] being present. [He could] end up having been convicted and lose [his] right to appeal." Raffaele's written release order stated that if he was convicted, he would be required to appear for sentencing; if he failed to appear, he could lose his right to a direct appeal.

¶8            Before trial, Raffaele failed to appear, and the court issued a bench warrant. In October 2017, Raffaele was tried in absentia, and the jury found him guilty of transporting two pounds or more of marijuana for sale.[2] He was arrested pursuant to a bench warrant in February 2019 and sentenced to 12.75 years in prison in April 2019. Raffaele timely appealed.

## DISCUSSION

I.     THIS COURT HAS APPELLATE JURISDICTION PURSUANT TO A.R.S. § 13-4033(A)(1).

¶9            This court has an independent duty to determine whether we have jurisdiction over matters on appeal. *State v. Perry*, 245 Ariz. 310, 311, ¶ 3 (App. 2018). "Our jurisdiction is prescribed by statute and we have no authority to entertain an appeal over which we do not have jurisdiction." *State v. Limon*, 229 Ariz. 22, 23, ¶ 3 (App. 2011). Appellate jurisdiction cannot be created by agreement of the parties, nor can the parties waive its absence. *Natale v. Natale*, 234 Ariz. 507, 509, ¶ 8 (App. 2014).

¶10          Arizona's Constitution provides that a criminal defendant has "the right to appeal in all cases." Ariz. Const. art. 2, § 24. This right is codified in A.R.S. § 13-4033(A), which specifies the kinds of orders a defendant may appeal. *State v. Bolding*, 227 Ariz. 82, 87, ¶ 13 (App. 2011). As applicable here, a defendant may appeal from a "final judgment of conviction." A.R.S. § 13-4033(A)(1). Raffaele's notice of appeal from the final judgment of conviction clearly purports to invoke this right.

¶11          The right to appeal, however, is not without limits. A defendant forfeits the right to appeal from a final judgment of conviction "if the defendant's absence prevents sentencing from occurring within ninety days after conviction and the defendant fails to prove by clear and convincing evidence at the time of sentencing that the absence was involuntary." A.R.S. § 13-4033(C); *see generally* Ariz. R. Crim. P. 26.9; *State v. Fettis*, 136 Ariz. 58, 59 (1983) ("[D]efendant must be present at his sentencing except in extraordinary circumstances . . . ."). This statute essentially authorizes "an implied waiver of a non-pleading defendant's right to a direct appeal." *Bolding*, 227 Ariz. at 87–88, ¶ 16 (noting further that "[a] number of other jurisdictions similarly bar a criminal defendant's appeal when the defendant has absconded") (citing cases).

---

[2]     The court granted Raffaele's motion for judgment of acquittal for the illegally conducting a criminal enterprise count.

**¶12**        In order for this implied waiver of a defendant's constitutional right to appeal under § 13-4033(C) to become effective, however, there must first be a finding that the waiver was knowing, voluntary, and intelligent. *See id.* at 88, ¶ 20. The burden of proving waiver of a constitutional right typically falls on the State. *See, e.g., State v. Greenawalt*, 128 Ariz. 150, 158 (1981) (waiver of right to counsel); *State v. Duffy*, 247 Ariz. 537, 547, ¶ 24 (App. 2019) (waiver of the right to conflict-free counsel); *State v. Jones*, 119 Ariz. 555, 557 (App. 1978) (waiver of right to remain silent); *see also Brewer v. Williams*, 430 U.S. 387, 404 (1977) (observing that "the proper standard to be applied in determining the question of waiver as a matter of federal constitutional law — that it was incumbent upon the State to prove 'an intentional relinquishment or abandonment of a known right or privilege'" (citation omitted)); *Barker v. Wingo*, 407 U.S. 514, 529 (1972) (stating that, for claimed waiver of fundamental rights, the Supreme Court has "placed the entire responsibility on the prosecution to show that the claimed waiver was knowingly and voluntarily made").

**¶13**        Raffaele's absence from trial delayed his sentencing by almost two years. Because the potential waiver authorized by section 13-4033(C) implicates a constitutional right, the State had the burden to show his waiver was knowing, voluntary, and intelligent. Further, we see no reason to depart from the procedural requirements that apply to a defendant's waiver of his right to trial by pleading guilty or no contest, i.e., that the superior court must find a knowing, voluntary, and intelligent waiver. *See* Ariz. R. Crim. P. 17.1(b) ("A court may accept a plea of guilty or no contest only if the defendant enters the plea voluntarily and intelligently. Courts must use the procedures in Rules 17.2, 17.3, and 17.4 to assure compliance with this rule."); *see also* Ariz. R. Crim. P. 17.3(a) (setting forth procedural requirements for acceptance of a plea of guilty).

**¶14**        As applied, the State failed to raise this issue in the superior court. As a result, the superior court made no such finding of a knowing, intelligent, and voluntary waiver applicable to this court's appellate jurisdiction. Accordingly, the record does not support the conclusion that Raffaele waived appellate jurisdiction.

**¶15**        To involve § 13-4033(C) requires a finding by the superior court that a defendant knowingly, intelligently, and voluntarily waived his or her right to an appeal by delaying sentencing by more than 90 days. The most logical time for the State to request such a finding to allow it to meet its burden for purposes of § 13-4033(C) would be at sentencing. During sentencing, the State would be required to present evidence that the

defendant knowingly, voluntarily, and intelligently waived his right to appeal by delaying sentencing by more than 90 days. Once the State met its burden, the defendant could present evidence to rebut the State's showing and present evidence that his absence was involuntary. *See* § 13-4033(C). The superior court could then weigh both parties' positions and make adequate findings of fact, including credibility determinations. *See, e.g.*, *State v. Jensen*, 217 Ariz. 345, 348, 350, ¶¶ 5, 12 (App. 2008). We further note that the superior court can infer that a defendant's absence "is voluntary if the defendant had personal notice of the time of the proceeding, the right to be present at it, and a warning that the proceeding would go forward in his or her absence should he or she fail to appear." *Bolding*, 227 Ariz. at 88, ¶ 19 (quoting Ariz. R. Crim. P. 9.1). But we emphasize that it is not for us to make such a determination for the first time on appeal and that the superior court must make such a finding at the time of sentencing. Because the waiver of the right to an appeal is not self-effectuating and the superior court made no finding during sentencing that such a waiver was made knowingly, voluntarily, and intelligently, this court therefore may hear the appeal pursuant to A.R.S. § 13-4033(A)(1).[3]

## II.     RAFFAELE'S PROLONGED TRAFFIC STOP WAS SUPPORTED BY A REASONABLE SUSPICION OF CRIMINAL ACTIVITY.

**¶16**          Having concluded that we have jurisdiction over this appeal, we now turn to the merits.  Raffaele contends that his prolonged traffic stop was not supported by a reasonable suspicion of criminal activity after he presented his medical marijuana card, issued under the Arizona Medical Marijuana Act (AMMA).  *See* A.R.S. §§ 36-2811(A)–(B). While we consider only the evidence presented at the suppression hearing and defer to the superior court's factual findings and credibility determinations, we review mixed questions of law and fact and the superior court's ultimate legal conclusion de novo. *State v. Spencer*, 235 Ariz. 496, 498, ¶ 8 (App. 2014); *State v. Teagle*, 217 Ariz. 17, 22, ¶ 19 (App. 2007).

**¶17**          A traffic stop cannot last "longer than is necessary to effectuate the purpose of the stop." *State v. Sweeney*, 224 Ariz. 107, 112, ¶ 17 (App. 2010) (citation omitted).  Once an officer has accomplished the purpose of the stop, the officer cannot continue to hold the driver "unless (1) the encounter between the driver and the officer becomes consensual, or

---

[3]          Because we conclude that A.R.S. § 13-4033(C) does not apply under these specific circumstances, we need not decide whether A.R.S. § 13-4033(C) is unconstitutional in light of *State v. Reed*, 248 Ariz. 72 (2020).

(2) during the encounter, the officer develops a reasonable and articulable suspicion that criminal activity is afoot." *Id.*

¶18      The State does not contest that the prolonged stop was nonconsensual. We are therefore tasked only with determining whether the officer had a reasonable and articulable suspicion that criminal activity was afoot.

¶19      "By definition, reasonable suspicion is something short of probable cause." *Teagle*, 217 Ariz. at 23, ¶ 25 (citation omitted). Although reasonable suspicion is more than a "hunch," it only requires an officer to articulate "some minimal, objective justification for an investigatory detention." *Id.* To determine whether an officer had a reasonable suspicion to prolong the traffic stop, a court must look at all relevant factors (each of which could have a potentially innocent explanation) and examine them collectively. *Id.* at 24, ¶ 25. We afford deference to a "law enforcement officer's ability to distinguish between innocent and suspicious actions." *Id.* at ¶ 26.

¶20      Here, after the officer smelled marijuana in the car, he had probable cause to hold Raffaele and search the vehicle. *See State v. Cheatham*, 240 Ariz. 1, 3, ¶ 11 (2016). But once Raffaele presented his medical marijuana card, the officer was "required to consider any indicia of AMMA-compliant possession or use, and such facts—as part of the totality of the circumstances—might dispel probable cause that otherwise exists based on odor alone." *Id.* at ¶ 12; *see also State v. Sisco*, 239 Ariz. 532, 537, ¶ 20 (2016) (noting that while "[p]resentation of a valid AMMA registry identification card . . . could indicate that marijuana is being lawfully possessed or used," the ultimate inquiry remains "consideration of the totality of the circumstances").

¶21      Based on the totality of the circumstances, the officer had a reasonable suspicion that criminal activity was afoot despite Raffaele presenting his medical marijuana card. Specifically, Raffaele admitted to smoking in the car two days earlier, which first alerted the officer to potential AMMA non-compliance. *See State v. Tagge*, 246 Ariz. 486, 489–90, ¶¶ 9–10, 15 (App. 2019) (holding that the AMMA does not permit smoking in a private vehicle in a public place). Additionally, Raffaele was driving a car rented under a third-party's name. At the suppression hearing, the officer testified that individuals engaged in illicit activities use rental cars to eliminate the risk of losing their personal vehicle in the event of a seizure. Moreover, Raffaele told the officer that he had luggage in the trunk which was inconsistent with his story that he was taking a day trip to California.

And although Raffaele appeared calm and was cooperative, the officer noted Raffaele's facial tremors, which indicated a higher level of nervousness and anxiety. Those facial tremors persisted even after the officer told Raffaele he would only receive a warning. Raffaele's behavior and inconsistencies, taken together, established a reasonable suspicion that Raffaele was not compliant with or could not otherwise properly invoke the AMMA and possessed more than the permitted amount of marijuana. The officer was thus permitted to continue to temporarily detain Raffaele for further investigation to confirm or dispel his suspicion of criminal activity. Accordingly, the superior court did not err by denying Raffaele's motion to suppress.

III.    THE SUPERIOR COURT DID NOT DEPRIVE RAFFAELE OF HIS SIXTH AMENDMENT RIGHT TO COUNSEL.

**¶22**        Raffaele next contends that the superior court improperly denied his motion to continue trial so that he could retain private counsel. We review the denial of a motion to continue for an abuse of discretion. *State v. Forde*, 233 Ariz. 543, 555, ¶ 18 (2014). We review de novo claims implicating a defendant's Sixth Amendment right to counsel. *State v. Ramos*, 239 Ariz. 501, 505, ¶ 15 (App. 2016).

**¶23**        Although the Sixth Amendment guarantees a criminal defendant counsel of choice, this right is not absolute and the superior court is granted "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, 152 (2006) (citations omitted). Whether a denial of a request for a continuance to obtain private counsel violates a defendant's constitutional rights depends on the circumstances of the particular case. *State v. Hein*, 138 Ariz. 360, 369 (1983). Courts must consider

> whether other continuances were granted; whether the defendant had other competent counsel prepared to try the case; the convenience or inconvenience to the litigants, counsel, witnesses, and the court; the length of the requested delay; the complexity of the case; and whether the requested delay was for legitimate reasons or was merely dilatory.

*Id.*

**¶24**        In September 2017—two weeks before trial was scheduled to begin—Raffaele requested a continuance so that he could hire new counsel. The State opposed the continuance because Raffaele's case had been

significantly delayed because of his warrant status, there had been three previous continuances, and it would cause significant witness issues for the State. The court ultimately denied the motion, noting that Raffaele failed to provide any evidence to suggest that his current attorney could not properly represent him at trial and stating that Raffaele could retain his desired new attorney if she could be prepared by the set trial date.

¶25        Although the superior court did not explicitly refer to the factors set forth in *Hein*, we nonetheless conclude the court did not err based on the record before us. The charges against Raffaele had been pending since August 2013. In August 2014, Raffaele failed to appear and was not rearrested until April 2017. Within that almost three-year delay, Raffaele could have retained counsel but failed to do so. Instead, he waited until two weeks before trial was scheduled to begin to ask for a continuance. Moreover, the superior court noted an inconvenience from a delay, specifically that the arresting officer planned to move out of town the day after he was scheduled to testify at trial.

¶26        Raffaele was also represented by competent counsel—so much so that the superior court felt compelled to note that his representation "was nothing short of outstanding"—who was prepared to go to trial. *See id.* at 369 ("If the defendant has other competent counsel prepared for trial, then the court, when considering all the factors, need not tolerate as much inconvenience as in the case where defendant has no other counsel prepared to go to trial.") (citation omitted). We thus find no abuse of discretion in denying Raffaele's continuance request.

IV.    THE TRIAL COURT ERRED BY IMPOSING A TWO-DOLLAR "PENALTY ASSESSMENT."

¶27        Raffaele contends, and the State concedes, that the superior court erred by imposing a two-dollar "penalty assessment" under A.R.S. § 12-116.09. We agree.

¶28        Section 12-116.09 became effective on January 1, 2015, and provides that a two-dollar penalty assessment shall be levied "on every fine, penalty and forfeiture imposed and collected by the courts for criminal offenses." A.R.S. § 12-116.09(A); *see also* 2014 Ariz. Sess. Laws, ch. 158, § 3 (2d Reg. Sess.). Raffaele committed the offense in August 2013. Because A.R.S. § 12-116.09(A) did not become effective until after Raffaele committed the offense at issue here and the statute imposes a punishment, *see State v. Beltran*, 170 Ariz. 406, 408 (App. 1992), the superior court increased Raffaele's punishment in violation of the constitutional

prohibition on *ex post facto* laws. Accordingly, we vacate the two-dollar assessment.

## CONCLUSION

**¶29**        For the foregoing reasons, we affirm Raffaele's conviction and sentence but vacate the two-dollar penalty assessment.



AMY M. WOOD • Clerk of the Court
FILED:    AA