IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RICHARD ALLEN REED, *Appellant.*

No. 1 CA-CR 17-0620
FILED 10-20-2020

Appeal from the Superior Court in Maricopa County
No. CR2015-117844-001
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian B. Francis
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Nicholaus Podsiadlik
*Counsel for Appellant*

M. Alex Harris, Chino Valley
*Counsel for Intervenor Lanna Mesenbrink*

Arizona Voice for Crime Victims, Phoenix
By Colleen Clase, Kathryn Fuller
*Co-Counsel for Amicus Curiae in support of Appellee*

National Crime Victim Law Institute, Portland, Oregon
By Margaret Garvin
*Co-Counsel for Amicus Curiae in support of Appellee*

---

**OPINION**

Presiding Judge Samuel A. Thumma delivered the opinion of the Court, in which Judge Randall M. Howe and Judge James B. Morse Jr. joined.

---

**T H U M M A**, Judge:

¶1        This appeal is on remand from the Arizona Supreme Court, which specified that "the only issue" for this court to decide "is whether the restitution amount is correct." *State v. Reed*, 248 Ariz. 72, 81 ¶ 33 (2020).

¶2        Defendant Richard Allen Reed, who challenged a criminal restitution order awarding the victim attorneys' fees, died while this appeal was pending. This court then dismissed the appeal. *State v. Reed*, 246 Ariz. 138, 140 ¶ 5 (App. 2019) (rejecting constitutionality challenge and applying Arizona Revised Statutes (A.R.S.) Section 13-106(A) (2018),[1] which states "[o]n a convicted defendant's death, the court shall dismiss any pending appeal."). The Arizona Supreme Court vacated this court's opinion, holding the Arizona Legislature "lacked authority" to enact Section 13-106(A). *Reed*, 248 Ariz. at 74 ¶ 2. In reinstating the appeal and remanding, the Supreme Court strongly suggested that this court permit Reed's widow, Lanna Mesenbrink, to intervene. *Reed*, 248 Ariz. at 81 ¶ 31 (quoting Ariz. R. Crim. P. 31.19(b)). On remand, this court granted Mesenbrink's motion to intervene, allowed supplemental briefing, has considered the arguments in the original and supplemental briefs, and now affirms the restitution award.

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**FACTS AND PROCEDURAL HISTORY[2]**

¶3        Reed was charged with voyeurism, a Class 5 felony committed against a co-worker in January 2015. The victim hired a law firm to represent her, assisting with determining and enforcing her rights as a victim. The law firm performed legal services for the victim, and the victim agreed to pay the firm for those services at established hourly rates. During a six-month period, the firm billed 37.6 hours of attorney time and 19 hours of paralegal time, totaling $17,909.50. Most of that time was for trial preparation, attending trial and then seeking restitution, with the remainder reflecting miscellaneous tasks and client communication. The firm spent no time on civil litigation or other independent legal services.

¶4        The jury found Reed guilty as charged and the court later placed him on probation, leaving restitution open. A motion for restitution sought, among other things, $17,909.50 for the victim's attorneys' fees. After an evidentiary hearing, the superior court issued a restitution order awarding the victim $17,909.50 in attorneys' fees and granting in part and denying in part other requested restitution. Reed timely appealed the restitution order awarding the victim attorneys' fees. *See State v. French*, 166 Ariz. 247, 248 n.3 (App. 1990) (noting an "order of restitution is a separately appealable order").

**DISCUSSION**

**I.        The Request for Judicial Notice Is Denied.**

¶5        Reed's counsel asks this court to take judicial notice of information about the victim's attorney and his law firm as well as compensation for public defenders, some of which was obtained from the Internet. None of that information, however, was provided to the superior court. Moreover, at the time of the restitution hearing, that information either was available to Reed's counsel (meaning, if relevant, it should have been provided to the superior court) or it was not available to Reed's counsel (meaning it could not have been considered by the court). Because the information was not provided to the superior court, it does not constitute adjudicative facts relevant to whether that court erred. *See* Ariz.

---

[2] Additional facts and procedural history are set forth in the prior decisions. *State v. Reed*, 246 Ariz. 138 (App. 2019), *vacated*, 248 Ariz. 72 (2020); *State v. Reed*, 1 CA-CR 16-0269, 2017 WL 1325647 (Ariz. App. Apr. 11, 2017) (mem. dec.) (affirming conviction and probation grant).

R. Evid. 201(a). Accordingly, the request to take judicial notice of the information is denied. *See* Ariz. R. Evid. 201.

## II. The Superior Court Properly Awarded the Victim Restitution for Attorneys' Fees She Reasonably Incurred.

**¶6** Reed's counsel raises broad challenges to the restitution award that can be categorized as follows: (1) the fees were consequential losses that cannot be awarded as restitution; (2) the superior court did not determine whether the fees were reasonable; (3) there was no evidence the victim incurred any loss; and (4) the award violated due process because it forced Reed to pay the victim for his own prosecution. Mesenbrink does not challenge the restitution award but claims the Clerk of Court improperly recorded the restitution order with the County Recorder, resulting in an improper lien on the community property she owned with Reed. The court addresses these claims in turn.

**¶7** This court reviews a restitution award for an abuse of discretion, *State v. Linares*, 241 Ariz. 416, 418 ¶ 6 (App. 2017), recognizing issues of statutory interpretation are reviewed de novo, *State v. Lantz*, 245 Ariz. 451, 453 ¶ 9 (App. 2018). Because restitution is neither an element of the offense nor punishment, it need only be established by a preponderance of the evidence. *State v. Lewis*, 222 Ariz. 321, 324 ¶ 7 (App. 2009). The superior court "has wide discretion in setting restitution based on the facts of each case." *State v. Dixon*, 216 Ariz. 18, 21 ¶ 11 (App. 2007) (citation omitted). "The court shall not consider the economic circumstances of the defendant in determining the amount of restitution." A.R.S. § 13-804(C). The superior court at the restitution hearing, not this court on appeal, properly resolves conflicting evidence; this court "view[s] the facts and all reasonable inferences therefrom in the light most favorable to" upholding a restitution award. *Lewis*, 222 Ariz. at 323, 324 ¶¶ 2, 5.

**¶8** Although Reed's counsel challenges the restitution awarded, no contention is made that attorneys' fees cannot be the subject of a restitution award. Indeed, the Arizona Supreme Court has affirmed such an award, ruling the superior court "did not abuse its discretion" in awarding attorneys' fees as restitution. *State v. Leteve*, 237 Ariz. 516, 530 ¶ 58 (2015). The defendant in *Leteve* did not challenge the award on appeal, and the court "assume[d], without deciding, that attorney fees incurred to enforce victims' rights may be compensable in restitution." *Id.* This court has affirmed restitution awards of attorneys' fees incurred in probate proceedings of victims who were killed. *See State v. Spears*, 184 Ariz. 277, 292 (1996) (finding attorneys' fees incurred to close victim's estate "are

proper restitutionary items" where no evidence indicates the fees incurred "were unreasonable or contrary to custom"); *State v. Baltzell*, 175 Ariz. 437, 439 (App. 1992) ("We believe that customary and reasonable attorney's fees incurred to close the victim's estate should be allowed" as restitution.). With this background, the court addresses the specific challenges asserted by Reed's counsel to the restitution award in this case.

### A. The Fees Awarded Were Economic Losses Recoverable as Restitution, Not Consequential Damages Exempt from Restitution.

¶9        A person convicted of a crime is required to make restitution "in the full amount of the economic loss as determined by the court." A.R.S. § 13-603(C); *accord* A.R.S. § 13-804 (authorizing restitution award "to any person who suffered an economic loss caused by the defendant's conduct"). Awarding restitution under A.R.S. § 13-603(C) is mandatory, while awarding restitution under A.R.S. § 13-804(A) "is discretionary but broad." *State v. Leal*, 248 Ariz. 1, 3 ¶ 8 (App. 2019). The victim here sought restitution under both Sections 13-603 and 13-804.

¶10        "Economic loss" is defined as "any loss incurred by a person as a result of the commission of an offense," including "losses that would not have been incurred but for the offense," but excluding "consequential damages." A.R.S. § 13-105(16). As Reed's counsel notes, "consequential damages that are too attenuated from the crime" are not recoverable as restitution. *Linares*, 241 Ariz. at 418 ¶ 9. Accordingly, to be recoverable as restitution: "(1) the loss must be economic, (2) the loss must be one the victim would not have incurred but for the criminal conduct, and (3) the criminal conduct must directly cause the economic loss." *Leal*, 248 Ariz. at 4 ¶ 12 (quoting *State v. Madrid*, 207 Ariz. 296, 298 ¶ 5 (App. 2004)); *see also State v. Wilkinson*, 202 Ariz. 27, 29 ¶ 7 (2002)).

¶11        Reed's counsel argues the fees awarded were not economic losses but, instead, were nonrecoverable consequential damages. Reed's counsel variously argues the fees awarded "had no nexus to the" crime; "were attenuated factually and temporally from the crime;" and did not "flow directly and immediately from the crime." It is true the fees were not incurred at the scene of the crime and were incurred after the crime. Reed's counsel, however, has cited no authority for the proposition that restitution is limited to services provided at the scene of the crime or other losses incurred before or at the time of the crime. In arguing Reed did not steal the fees, Reed's counsel argues the victim could not seek reimbursement for the cost of services the victim incurred because of Reed's crime. That argument,

however, is contrary to Arizona law. *See State v. Morgan*, 248 Ariz. 322, 327 ¶ 18 (App. 2020) ("[T]he sentencing order's contemplation of restitution for post-sentencing counseling expenses was not erroneous."); *State v. Wideman*, 165 Ariz. 364, 369 (App. 1990) ("The trial court correctly awarded restitution for mental health counseling expenses."). Indeed, Reed stipulated to pay for the cost of therapy the victim underwent after the crime.

**¶12**        Reed also asserts that the fees "had no reasonably foreseeable connection to the crime." But Reed offers no authority suggesting that foreseeability, a concept found irrelevant to duty in civil negligence claims, *Gipson v. Casey*, 214 Ariz. 141, 144 ¶ 15 (2007), constrains statutory restitution in criminal cases. The fees awarded as restitution here were incurred because of Reed's crime, after he committed that crime but before the restitution hearing. Accordingly, they had a nexus to the crime, and followed and flowed factually and temporally from Reed's crime. The superior court, therefore, could conclude that they flowed "directly from the defendant's criminal conduct, without the intervention of additional causative factors." *Wilkinson*, 202 Ariz. at 29 ¶ 7.

**¶13**        The cases Reed's counsel cites to argue that the fees are consequential damages are not on point. The victim here incurred the fees awarded as restitution in asserting her rights under the Victims' Bill of Rights in Arizona's Constitution. She actually incurred the fees; they were not a theoretical future loss. *Cf. State v. Sexton*, 176 Ariz. 171, 173 (App. 1993) (concluding loss "victims might suffer in the future as the result of having no homeowner's liability insurance is too indirect to be the subject of restitution under the provisions of our statutes"); *State v. Pearce*, 156 Ariz. 287, 289 (App. 1988) (finding lost profits and breach of a lease were consequential damages not recoverable in restitution). Nor does the record support the argument by Reed's counsel that the victim's attorney impermissibly served as "an adjunct prosecutor." *State v. Slover*, 220 Ariz. 239, 243 ¶¶ 8–9 (App. 2009) (vacating restitution award to victim's wife for attorneys' fees representing "tasks that were actually the state's responsibility," adding "[w]e do not address whether such fees would be proper restitution items under other factual circumstances, such as when the victim hires an attorney to assert a concrete right under the Victims' Bill of Rights"). And Reed's counsel has not shown the restitution awarded here is akin to the State's seeking restitution "for costs of investigating an escape and recapturing the escapee" or where the "'appellate court cannot determine the basis of the restitution order from the record.'" *State v. Guilliams*, 208 Ariz. 48, 51, 56 ¶¶ 7, 27 (App. 2004); *accord Linares*, 241 Ariz.

at 418 ¶ 9 (following *Guilliams*). Accordingly, the cases upon which Reed's counsel relies do not cast doubt on the restitution order.

¶14 Reed's counsel repeatedly suggests that awarding the victim fees as restitution constitutes an impermissible windfall. Reed's counsel has not shown how a restitution order reimbursing a victim for fees incurred because of a criminal voyeurism offense constitutes a windfall for the victim. This is not a case where the restitution award exceeded the victim's actual loss. *See State v. Ellis*, 172 Ariz. 549, 550 (App. 1992) (vacating restitution order where amount awarded was for purchase price, not fair market value, of personal property). Moreover, the suggestion that the victim here received a benefit because of Reed's criminal behavior, meaning restitution should be offset by those benefits, is baseless. *See Town of Gilbert Prosecutor's Office v. Downie*, 218 Ariz. 466, 467 ¶ 1 (2008) (finding "restitution to be paid by a defendant convicted of contracting without a license may be reduced by any value conferred on the homeowner").

¶15 On this record, Reed's counsel has failed to show the superior court erred in finding the attorneys' fees were economic loss and therefore recoverable as restitution. The court could properly conclude the attorneys' fees the victim sought were an economic loss she incurred "as a result of the commission" of the crime by Reed "that would not have been incurred but for the offense." A.R.S. § 13-105(16). Accordingly, Reed's argument to the contrary fails.

**B.    Reed's Counsel Has Not Shown the Superior Court Failed to Assess the Reasonableness of the Restitution Award.**

¶16 Reed's counsel argues "[t]he court erred by blanket-approving all of [the fees requested as restitution] without examining them for reasonableness." This argument is not supported by the record. The court was not required to make specific findings of fact or conclusions of law in awarding restitution, and none were requested here. Moreover, "judges are presumed to know the law and to apply it in making their decisions." *State v. Trostle*, 191 Ariz. 4, 22 (1997) (quoting *Walton v. Arizona*, 497 U.S. 639, 653 (1990)). Nor has Reed's counsel pointed to anything in the record to suggest the court failed to assess the reasonableness of the restitution requested.

**¶17** Reed's counsel next argues that the hourly rates for the fees awarded (around $400 per hour) were unreasonable. This argument, however, was not presented to the superior court. Indeed, Reed presented no evidence at the restitution hearing regarding the request for fees. The victim's attorney, by contrast, provided the court an affidavit, under oath, that the rates charged and the services performed were reasonable and consistent with fees customarily charged in the community where the services were performed. On this record, Reed's counsel has not shown the applicable hourly rate was "unreasonable or contrary to custom." *Spears*, 184 Ariz. at 292.

**¶18** Reed argues that a $400 hourly rate is higher than what "any judge, prosecutor, defense attorney, or any other government lawyer" is paid. Reed also argues the victim's attorney was "less efficient" than if the victim had retained an experienced criminal lawyer. But these arguments do not mean the applicable hourly rate, or the amount of the restitution award, was unreasonable. Simply put, Reed has not shown the lawyer's hourly rate, or the restitution awarded, impermissibly punished the defendant, provided the victim a windfall or was otherwise improper. *See Town of Gilbert Prosecutor's Office*, 218 Ariz. at 471–72 ¶ 25.

### C. The Victim Was Obligated to Pay the Fees.

**¶19** Reed's counsel argues there was insufficient evidence to show the victim paid or was required to pay the fees awarded as restitution. Not so. The evidence provided to the superior court included an affidavit stating the victim agreed to (and, accordingly, was obligated to) pay the attorneys' fees. The law firm the victim retained performed legal services on the victim's behalf and the affidavit included descriptions of the work performed. This record allowed the superior court to conclude the victim had a contract with the law firm to provide legal services, which obligated the victim to pay for such services, and that the law firm performed those services under that contract. Any uncertainty about whether the victim had already paid for those services does not, somehow, defeat a restitution award. *See, e.g., State v. Steffy*, 173 Ariz. 90, 95 (App. 1992) (holding superior "court did not err in ordering payment of restitution for the unpaid medical expenses to the victim even though future reimbursement may be paid by an insurer who has not sought reimbursement"); *State v. Howard*, 168 Ariz.

458, 460 (App. 1991) (affirming restitution order awarding victim future medical expenses and future lost wages).[3]

### D. The Victim's Attorney Did Not Privately Prosecute Reed in Violation of Reed's Due Process Rights.

¶20 Reed's counsel suggests that the victim's attorney "acted as a private prosecutor" and that "[i]t violates due process to allow a private attorney, who represents the victim in a criminal case, to help prosecute the criminal case." The sole authority cited for this proposition is a Missouri Supreme Court opinion that condemned "the practice of allowing *private* prosecutors, employed by *private* persons, to participate in the prosecution of criminal defendants" as "inherently and fundamentally unfair." *State v. Harrington*, 534 S.W.2d 44, 48 (Mo. 1976).

¶21 This issue was not raised with the superior court, and Reed's counsel suggests it is not being raised in this appeal. Instead, Reed's counsel states this argument will be raised in "post-conviction relief proceedings," which are not a part of this appeal. To the extent this argument is raised here, the record is devoid of any participation by the victim's counsel that would run afoul of Reed's due process rights even if *Harrington* applied. The State (not the victim's attorney) prosecuted the case against Reed, while the victim's attorney represented the victim and her rights. This representation properly included offering evidence and argument at the restitution hearing, given "[t]he state does not represent persons who have suffered economic loss at the [restitution] hearing but may present evidence or information relevant to the issue of restitution." A.R.S. § 13-804(G). Because Reed's counsel has not shown the victim's attorney improperly participated in the prosecution of the case in a way that violated Reed's due process rights, this argument fails.

## III. Mesenbrink Has Shown No Basis to Vacate the Restitution Award.

¶22 In supplemental briefing, Reed's widow Mesenbrink does not challenge the restitution award itself. Instead, she challenges the fact that, after the court issued the restitution award, the Clerk of the Maricopa County Superior Court recorded the order with the Maricopa County Recorder. She argues the recording created a lien on community property

---

[3] Reed's counsel cites *Kohn v. Barker*, No. 015374, 2007 WL 1418514 (Mass. Super. Ct. Apr. 4, 2007) (mem.), but has not shown that citation to a state trial judge's decision from another jurisdiction is proper, or that the case supports a contrary conclusion. *See* Ariz. R. Sup. Ct. 111(d).

she owned with Reed. Without citing any applicable authority, Mesenbrink asks this court to order that (1) community property is not subject to the restitution order, (2) the lien be released and (3) the Clerk of the Superior Court record this court's decision with the County Recorder and the Arizona Department of Transportation.

¶23 These requests appear to exceed this court's authority on remand from the Arizona Supreme Court, which is limited to determining "whether the restitution amount is correct." *Reed*, 248 Ariz. at 81 ¶ 33. Given that limited remand, Mesenbrink has not shown how this court has jurisdiction to consider her request to seek relief beyond a challenge to the amount of restitution. *See State v. Healer*, 246 Ariz. 441, 448 ¶ 19 (App. 2019) (finding trial court did not have authority to reconsider consecutive sentences when remand was limited to whether a natural life sentence was appropriate); *see also State v. Young*, 109 Ariz. 133, 134 (1973) (holding that the "scope" of an appeal is limited to the issues on which the case was previously remanded).

¶24 In making these requests, Mesenbrink also misconstrues this court's jurisdiction in this criminal appeal. "Notwithstanding any other law, a restitution lien is created in favor of a victim of the defendant ordered to make restitution." A.R.S. § 13-804(L). Mesenbrink argues the restitution order was recorded with the Recorder's Office "by the Superior Court on its own initiative, through the Clerk of the Superior Court." However, the Clerk of the Superior Court and the County Recorder are authorized officers distinct from the Superior Court. *See* Ariz. Const. Art. 6, § 23 (Clerk of Superior Court); Art. 12, § 4 (county officers); *see also* A.R.S. §§ 12-281 to -290 (Clerk of Superior Court); A.R.S. §§ 11-461 to -484 (County Recorder as County Officer). Accordingly, Mesenbrink's suggestion that the Clerk of the Superior Court's recording the restitution order with the County Recorder was, in fact, the Superior Court's conduct is not supported by the record.

¶25 Nothing suggests that Mesenbrink has requested that the County Recorder or the Clerk of the Superior Court revoke or cancel the recording. Nor does it appear that Mesenbrink has sought such relief by filing an action in the Superior Court. Moreover, the case upon which she relies in seeking relief from this court in this criminal appeal—*Alberta Securities Commission v. Ryckman*, 200 Ariz. 540 (App. 2001) —arose out of a civil case filed in Superior Court seeking to enforce a foreign judgment. Finally, the County Recorder and the Clerk of the Superior Court have not been joined as parties to this appeal and Mesenbrink has not shown how this court would have jurisdiction to provide the relief she seeks. For all these reasons, the relief Mesenbrink requests is denied without prejudice to

her seeking relief in an appropriate forum by filing an appropriate action naming and joining the necessary parties.

## CONCLUSION

¶26 The restitution award is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA