IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**STATE OF ARIZONA,**
*Appellee,*

*v.*

**RICHARD ALLEN REED,**
*Appellant.*

No. CR-20-0385-PR
Filed February 1, 2022

Appeal from the Superior Court in Maricopa County
The Honorable Danielle J. Viola, Judge
No. CR2015-117844-001
**REVERSED IN PART AND REMANDED**

Opinion of the Court of Appeals, Division One
250 Ariz. 599 (App. 2020)
**VACATED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, Brunn (Beau) Roysden III, Solicitor General, Linley Wilson, Deputy Solicitor General/Section Chief Counsel of Criminal Appeals, Jillian B. Francis (argued), Assistant Attorney General, Phoenix, Attorneys for State of Arizona

James Haas, Maricopa County Public Defender, Kevin D. Heade (argued) Deputy Public Defender, Phoenix, Attorneys for Richard Allen Reed

Randall S. Udelman (argued), Arizona Crime Victim Rights Law Group, Scottsdale, Attorneys for Victim C.C.

Colleen Clase, Arizona Voice for Crime Victims, Inc., Phoenix, Attorneys for Amicus Curiae Arizona Voice for Crime Victims, Inc.

David J. Euchner, Pima County Public Defender's Office, Tucson, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

M. Alex Harris, M. Alex Harris, P.C., Chino Valley, Attorney for Intervenor Lanna Mesenbrink

_____

VICE CHIEF JUSTICE TIMMER authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, and JUSTICES BOLICK, LOPEZ, BEENE, KING, and PELANDER (RETIRED) joined.[*]

_____

VICE CHIEF JUSTICE TIMMER, opinion of the Court:

¶1 Richard Allen Reed used a mirror to look beneath the door of a bathroom being used by C.C. A jury convicted Reed on one count of voyeurism, a class 5 felony, in violation of A.R.S. § 13-1424. The trial court awarded restitution to C.C., including attorney fees she had incurred in retaining an attorney to represent her in the criminal proceedings.

¶2 This case requires us to decide whether a victim's attorney fees are recoverable as criminal restitution and, if so, to what extent. We conclude such fees are recoverable but only when an attorney is reasonably necessary to remedy the harm caused by the criminal conduct. Here, most or possibly all of C.C.'s fees do not fall within this category and therefore are not recoverable as criminal restitution.

_____

[*] Justice Montgomery is recused from this matter. Pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (Ret.) of the Arizona Supreme Court was designated to sit in this matter.

2

## BACKGROUND

¶3        C.C. hired the Gust Rosenfeld law firm to assist her in determining and enforcing her rights as a crime victim.   To that end, attorney Craig Keller, who primarily represented C.C., actively participated in Reed's criminal case.   Among other things, Keller served as a go-between for C.C., the prosecutor, and C.C.'s crime victim advocate; analyzed court filings, like disclosure statements and witness lists; examined and commented on a proposed plea deal; met with the prosecutor to strategize and prepare for trial; attended a two-day trial; and drafted a motion for restitution, which the State apparently filed.   Gust Rosenfeld billed C.C. $17,909.50 for time incurred by Keller (36.3 hours), an associate attorney (1.3 hours), and a paralegal (19 hours).

¶4        A jury convicted Reed as charged, and the court of appeals affirmed.   *See State v. Reed* (*Reed III*), 248 Ariz. 72, 74 ¶ 3 (2020).   Thereafter, the trial court conducted a restitution hearing, in which Keller, not the prosecutor, presented the case "[w]ith respect to the State's position."   The parties stipulated that C.C. was entitled to $3,083.61 for mental health counseling sessions she underwent because of Reed's voyeurism and an additional $40 in costs for obtaining a protective order.   The court disallowed C.C.'s requests for moving expenses and lost wages as unproven.   As relevant here, the court ordered payment of $17,909.50 as restitution for Gust Rosenfeld's attorney fees.

¶5        Reed died pending his appeal from the criminal restitution order.   *Reed III*, 248 Ariz. at 74 ¶ 1.   The court of appeals dismissed the appeal, but we vacated that decision and remanded for that court to decide whether the restitution amount was correct.   *Id.* at 74 ¶ 1, 81 ¶¶ 33–34.   Thereafter, the court permitted Reed's wife, Lanna Mesenbrink, to intervene and file a supplemental brief.   *See State v. Reed* (*Reed IV*), 250 Ariz. 599, 601 ¶ 2 (App. 2020).   The court ultimately affirmed the restitution order.   *Id.*

¶6        Reed's counsel and Mesenbrink petitioned this Court for review.   We granted review because whether and to what extent a victim's

attorney fees are recoverable as criminal restitution is a recurring issue of statewide importance.

## DISCUSSION

### I.

¶7          The Victims' Bill of Rights enshrined in our state constitution guarantees crime victims "prompt restitution from the person or persons convicted of the criminal conduct that caused the victim's loss or injury." Ariz. Const. art. 2, § 2.1(A)(8).   This guarantee includes a right to full restitution.   *See State v. Patel*, 251 Ariz. 131, 133 ¶ 2 (2021).   The issue here involves the scope of "restitution."

¶8          We do not write on a blank slate.   In *State v. Wilkinson*, 202 Ariz. 27, 28–29 ¶¶ 1, 6–7 (2002), this Court examined statutes implementing victims' constitutional guarantee for restitution to decide whether and to what extent a court could order restitution for victims of an unlicensed contractor who performed incomplete and faulty home remodeling work. The Court cited A.R.S. § 13-603(C), which requires restitution "in the full amount of the economic loss" suffered by the victim, and then quoted what is now A.R.S. § 13-105(16), which defines "economic loss" as "losses which would not have been incurred but for the offense," excepting "damages for pain and suffering, punitive damages [and] consequential damages." *Wilkinson*, 202 Ariz. at 28–29 ¶ 6.

¶9          Considering these statutes, the Court concluded restitution should be ordered for losses that (1) are economic; (2) would not have been incurred by the victim but for the criminal offense; and (3) were directly caused by the criminal conduct.   *Id.* at 29 ¶ 7.   "If the loss results from the concurrence of some causal event other than the defendant's criminal conduct, the loss is indirect and consequential and cannot qualify for restitution under Arizona's statutes."   *Id.*   Aside from remaining faithful to statutory language, this limitation "also prevents the restitution statutes from conflicting with the right to a civil jury trial preserved by Arizona Constitution Article II, Section 23."   *Id.* ¶ 11.

4

¶10 Applying these standards, this Court concluded the contractor was required to "yield up to his victim[s] the fruits of the crime," which were the payments made to him to perform home remodeling. *Id.* ¶ 9 (quoting *United States v. Fountain*, 768 F.2d 790, 800 (7th Cir. 1985)). But we disallowed as restitution losses attributable to the contractor's incomplete and shoddy work, concluding that the "criminal conduct of contracting without a license did not cause these losses." *Id.* ¶ 10. Because these losses would not have occurred without a second causal event—the contractor's poor workmanship—the losses constituted indirect damages that could not qualify as restitution. *Id.*

¶11 Cases decided after *Wilkinson* have reaffirmed its holding. *See Town of Gilbert Prosecutor's Off. v. Downie ex rel. Cnty. of Maricopa*, 218 Ariz. 466, 472 ¶ 28 (2008) (stating that criminal restitution will not always fully compensate the victim because losses may not "flow directly from the crime" and echoing concerns about "too broadly combin[ing] civil liability with criminal sentencing" (quoting *Wilkinson*, 202 Ariz. at 30 ¶ 12)); *Patel*, 251 Ariz. at 135 ¶ 14 ("The right to restitution is thus a right to the full amount required to restore victims to the position they were in before the loss or injury caused by the criminal conduct."); *State v. Slover*, 220 Ariz. 239, 242–43 ¶ 5 (App. 2009) (concluding "a court should order restitution for 'damages that flow directly from the defendant's criminal conduct, without the intervention of additional causative factors'" (quoting *Wilkinson*, 202 Ariz. at 29 ¶ 7), and describing unrecoverable consequential damages as losses "not flow[ing] directly and immediately from the action of the party, but only from the consequences or results of such act" (quoting *State v. Morris*, 173 Ariz. 14, 17 (App. 1992))); *see also* Ariz. Const. art. 2, § 2.1(A)(8) (guaranteeing "restitution from the person or persons convicted of *the criminal conduct that caused the victim's loss or injury*" (emphasis added)); A.R.S. § 13-804(B) (requiring court ordering restitution to "consider all losses *caused by the criminal offense or offenses*" (emphasis added)).

## II.

¶12 Petitioners argue the trial court improperly ordered payment of C.C.'s attorney fees as restitution because those fees did not flow directly

from Reed's criminal conduct but instead constituted consequential damages, which cannot be recovered as restitution. *See* § 13-105(16), -603(C). The State counters the court properly ordered the fees because "the fact that [C.C.] was involved in a contentious trial and found it necessary to retain counsel was the direct result of Reed's conduct."

¶13 We review a restitution order for an abuse of discretion. *State v. Leteve*, 237 Ariz. 516, 530 ¶ 58 (2015) (citing *State v. Lewis*, 222 Ariz. 321, 323 ¶¶ 2, 5 (App. 2009)). "A trial court abuses its discretion if it misapplies the law or exercises its discretion based on incorrect legal principles." *Slover*, 220 Ariz. at 242 ¶ 4. We review the interpretation of statutes and the constitution de novo. *See Johnson Utils., L.L.C. v. Ariz. Corp. Comm'n*, 249 Ariz. 215, 219 ¶ 11 (2020).

¶14 Neither the legislature nor this Court has addressed whether attorney fees voluntarily incurred by a victim in criminal proceedings are recoverable as restitution. Pursuant to A.R.S. § 13-4437, a victim has standing in criminal proceedings to "enforce any right or to challenge an order denying any right guaranteed to victims," including presenting evidence and arguments at a restitution hearing, without having to pay a filing fee. § 13-4437(A), (E). In exercising these rights, the victim can choose "to be represented by personal counsel *at the victim's expense*." § 13-4437(A) (emphasis added). In context, this provision does not mean such fees cannot later be recovered as restitution, as Petitioners contend. *See Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019) (stating statutory language is appropriately interpreted in context). The legislature was identifying the costs the victim and the state would bear if the victim appears in the criminal proceedings and asserts the victim's rights; the state would bear the filing fee and the victim would bear the fees charged by a retained attorney. Nothing in § 13-4437 addresses whether the attorney fees could later be reimbursed by the defendant as restitution. *See Leteve*, 237 Ariz. at 530 ¶ 58 ("We assume, without deciding, that attorney fees incurred to enforce victims' rights may be compensable in restitution, as Leteve has not raised that issue on appeal.").

¶15 This Court has found that attorney fees are recoverable as restitution in certain circumstances. In *State v. Spears*, the Court concluded

that reasonable attorney fees incurred by a murder victim's family to close the victim's estate in another jurisdiction were appropriately ordered as restitution because they were customary and reasonable. 184 Ariz. 277, 291–92 (1996) (citing *State v. Baltzell*, 175 Ariz. 437, 438–39 (App. 1992)). The Court did not provide extensive analysis other than to conclude that the attorney fees would not have been incurred but for the murder and did not constitute consequential damages. *Id.* at 292.

**¶16**        The court of appeals in *Slover* addressed whether a victim's attorney fees could be ordered as restitution in a criminal case. 220 Ariz. at 242 ¶ 1. Slover was convicted of negligent homicide and DUI after his passenger died in a rollover accident. *Id.* ¶¶ 1–2. On appeal, Slover challenged the restitution order requiring him to pay attorney fees incurred by the victim's wife during the criminal proceedings. *Id.* ¶ 4. The victim's attorney essentially "acted in the role of an adjunct prosecutor, 'prodding' the state to pursue the case and apparently assisting it with the prosecution." *Id.* at 243 ¶ 8. The court of appeals disallowed the fees because they did not flow directly from the criminal conduct but instead "arose from either the state's inability to prosecute the case independently and competently or the wife's mistrust that it would do so." *Id.* The court concluded that the victim's attorney fees were "consequential rather than direct damages arising from Slover's crime." *Id.* The court left for a future case whether attorney fees incurred by a victim to "assert a concrete right under the Victims' Bill of Rights" could be recovered as restitution. *Id.* ¶ 9.

**¶17**        Turning to this case, C.C.'s attorney fees were unquestionably an economic loss she would not have incurred but for Reed's criminal offense. *See Wilkinson*, 202 Ariz. at 29 ¶ 7. The pivotal inquiry is whether Reed's criminal conduct "directly cause[d] the economic loss," a prerequisite to restitution. *Id.*; *see also* §§ 13-105(16), -603(C), -804(B).

**¶18**        The criminal conduct here was Reed spying on C.C. while she was in the bathroom. Indisputably, an economic loss flowing directly from that conduct was the cost C.C. incurred for therapy sessions she underwent to ameliorate the nightmares, anxiety, and other mental distress she suffered because of Reed's conduct. The trial court therefore properly

ordered Reed to pay the therapy costs as restitution. *See Wilkinson*, 202 Ariz. at 29 ¶ 9; *State v. Wideman*, 165 Ariz. 364, 369 (App. 1990) (allowing restitution to murder victim's family for mental health counseling expenses).

**¶19** Reed's criminal conduct also directly resulted in his prosecution, meaning C.C., as the victim unavoidably entwined in the case, was entitled to restitution for economic losses incurred due to her exercise of victims' rights in the case. *See State v. Lindsley*, 191 Ariz. 195, 199 (App. 1997) (affirming restitution award of victim's lost wages incurred to attend trial); *State v. Madrid*, 207 Ariz. 296, 300 ¶ 10 (App. 2004) (concluding victims' travel expenses to attend trial can be ordered as restitution). But not all out-of-pocket expenses incurred by victims exercising their rights in criminal cases are recoverable as restitution. For example, although the victim in *Slover* had a right to confer with the prosecutor, *see* Ariz. Const. art. 2, § 2.1(A)(6), losses she incurred to pay a private attorney to effectively serve as an adjunct prosecutor were properly disallowed as indirect, consequential damages. *See* 220 Ariz. at 243 ¶ 8.

**¶20** Drawing a precise line between allowable and disallowable losses for attorney fees incurred due to a victim's exercise of rights in criminal proceedings is challenging due to the uniqueness of each case. We therefore provide broad guidance, which trial courts can apply to the pertinent facts.

**¶21** We are guided by our decision in *Spears*, which recognized that attorney fees are appropriately ordered as restitution when an attorney is reasonably necessary to remedy the harm caused by the criminal conduct. *Spears*, 184 Ariz. at 291–92. Thus, just as in the probate proceedings at issue in *Spears*, attorneys may be reasonably necessary to rectify harms directly caused by criminal conduct in several scenarios, including financial fraud, embezzlement, or identity theft. Similarly, when a victim retains an attorney to enforce her rights in the criminal proceedings, the court should order payment of those fees as restitution when attorneys are reasonably necessary to enforce these rights. Setting this standard accommodates constitutional and legislative directives that restitution reimburse a victim for losses caused by criminal conduct and simultaneously avoids any

conflict with the constitutional right to a civil jury trial. *See Wilkinson*, 202 Ariz. at 29 ¶ 11 (citing Ariz. Const. art. 2, § 23). It also avoids risking that defendants will be inappropriately deterred from pursuing their constitutional rights to mount a defense and proceed to trial by the prospect of paying a victim's limitless attorney fees incurred in the proceedings.

¶22 Allowable fees in criminal proceedings may include, on the one hand, payments to an attorney retained to marshal restitution evidence in a complex financial fraud case or to appear in a case to assert a right denied the victim or to protect the victim from harassment. *See* Ariz. Const. art. 2, § 2.1(A)(1), (8). On the other hand, payments to an attorney to monitor court filings, watch the trial, and advise the victim about the criminal process are likely not allowable fees because attorneys are not typically necessary for a victim to be informed of proceedings. *See id.* § 2.1(A)(3); A.R.S. § 13-4409(C) (requiring prosecutor to notify victims of court proceedings); A.R.S. § 13-4420 (providing that victim has the right to be present at all criminal proceedings that defendant may attend); A.R.S. § 13-4430 (contemplating that crime victim advocates assist victims in exercising rights). Whether payments to an attorney to appear and represent a victim at a court proceeding are recoverable as restitution will depend on the complexity of the issue in the proceeding, whether the prosecutor would otherwise have enforced the victim's rights, and whether legal assistance is reasonably necessary for a victim to exercise her rights. *See Spears*, 184 Ariz. at 291–92; *see also* § 13-4437(C) ("At the request of the victim, the prosecutor may assert any right to which the victim is entitled.").

¶23 Our reasoning is mirrored in *State v. Hunziker*, 56 P.3d 202, 204–05 (Kan. 2002), which addressed whether a victim whose backhoe tractor was criminally damaged was entitled to restitution for attorney fees he incurred for his attorney to help prepare a restitution memorandum for the court and advise him about court procedures. Like in Arizona, restitution in Kansas was limited to "damage or loss caused by the defendant's crime." *Id.* at 206. The Kansas Supreme Court disallowed the attorney fees as restitution, concluding they were "not a direct result of [the defendant's] criminal conduct" but "arose as an indirect or consequential result of [the defendant's] crime." *Id.* at 210. It agreed with the court of appeals in a companion case that attorney fees may be

allowed when an attorney is needed to "trace embezzled funds, recreate destroyed data, or recover stolen property" and the like, but found that was not the situation in *Hunziker*. *Id.* (citing *State v. Cox*, 42 P.3d 182, 185, 187 (Kan. Ct. App. 2002)); *see also State v. Herfurth*, 388 P.3d 1104, 1108 (Or. Ct. App. 2016) (limiting restitution for victim's attorney fees incurred in the criminal proceedings to those necessary, reasonable, and foreseeable).

¶24 Our court of appeals here reached a different result. It reasoned that C.C.'s attorney fees were not consequential damages because they "were incurred because of Reed's crime" and therefore "had a nexus to the crime, and followed and flowed factually and temporally" from it. *Reed IV*, 250 Ariz. at 603 ¶ 12. This analysis conflates consequential damages with "but-for" causation, effectively eliminating *Wilkinson*'s third step and the legislative limitation on economic losses recoverable as restitution. *See Wilkinson*, 202 Ariz. at 29 ¶ 7; §§ 13-105(16), -603(C), -804(B). The reasoning we employ here respects *Wilkinson*'s third step and, therefore, respects legislative intent.

¶25 We agree with Petitioners that most and possibly all of C.C.'s attorney fees were not directly caused by Reed's criminal conduct but were instead an indirect consequence of that conduct. At the restitution hearing, Keller said C.C. hired Gust Rosenfeld to "analyze her rights . . . help her navigate the process . . . and to fill the gap between the State presenting its best case, victim's rights, doing what it has the budget, dedication and time to do, [and] shepherding the matter along through the system." He described his firm's role as "help[ing] her from day one in terms of analyzing the claim, describing what she can expect through the process, working with the prosecutor, developing list[s] of questions for all of the witnesses, contacting witnesses, preparing them for the trial, sitting through the trial, meeting with her and the prosecutor for strategy sessions at night, making sure that she understood exactly what was expected of her, working to resolve factual details in the various stories and the defenses that would come up." Gust Rosenfeld's detailed billing statements confirm Keller's recitation.

¶26 With one exception, *see infra* ¶ 28, nothing in the record suggests that a private attorney is reasonably necessary for a victim to

exercise the rights C.C. exercised in this case. The State does not point to any right denied to C.C. that she needed an attorney to help enforce. Indeed, Keller did not raise any issues to the court other than arguing for restitution. Concerning restitution, evidence of C.C.'s claimed losses other than attorney fees—therapy expenses, travel, moving expenses, and a protective order fee—were easily understood and did not need to be marshaled by an attorney. *See Hunziker*, 56 P.3d at 210. And although C.C. obtained a protective order, she did so on her own, not through her attorney. Keller told the court at the restitution hearing that the protective order was "not relevant" and only "a 40-dollar claim" because C.C. dropped the matter and never had the order served on Reed. Keller's time spent strategizing with the prosecutor and preparing for trial did not further C.C.'s rights as she had no right to direct the prosecution. *See* A.R.S. § 13-4419(C) ("The right of the victim to confer with the prosecuting attorney does not include the authority to direct the prosecution of the case."); *see also Slover*, 220 Ariz. at 243 ¶ 8.

**¶27** This record also does not support a finding that an attorney was reasonably necessary to analyze C.C.'s rights and explain them and the criminal process to her. By statute, the law enforcement agency that investigates the criminal offense must "provide electronic forms, pamphlets, information cards or other materials to the victim" that explain a victim's rights and provide other essential information, such as contact information for public and private victim assistance programs and programs providing "counseling, treatment and other support services." A.R.S. § 13-4405(A), (A)(3)(d). Prosecuting agencies are required to provide notices of proceedings to the victim and confer with victims at their request. A.R.S. §§ 13-4406 to -4411.01, -4419. C.C. had a crime victim advocate, presumably received the required notices, and was able to confer with the prosecutor. And if not, she is entitled to damages from the agency "responsible for the intentional, knowing or grossly negligent violation of [her] rights." § 13-4437(B).

**¶28** We next address two billing entries that arguably justify payment of attorney fees as restitution. Keller reviewed a social media screenshot purportedly evidencing Reed's attempts to contact C.C. during the case and communicated with the prosecutor about those attempts.

The conditions for Reed's pre-trial release prohibited him from contacting C.C., and, doing so may have also violated C.C.'s right to be free from intimidation and harassment. *See* Ariz. Const. art. 2, § 2.1(A)(1). The record does not reflect whether Reed, in fact, attempted to contact C.C., what he may have communicated, or whether action was taken to enforce C.C.'s constitutional right to be free from intimidation or harassment. If Keller merely served as a conduit for communicating information between C.C. and the prosecutor, Keller's fees cannot constitute restitution because it is not reasonably necessary to have an attorney serve in that role. But if Keller had to involve himself in the matter because, for example, the prosecutor was unwilling or unavailable to enforce C.C.'s rights, the fees may constitute valid restitution.

¶29 We recognize that these billing entries did not result in a significant sum of attorney fees, and the parties may be well-served by reaching an accommodation on the matter. Nevertheless, because we cannot say as a matter of law on this record that C.C. is not entitled to restitution for these fees, and because the parties and the trial court did not have the benefit of this opinion at the time of the restitution hearing, we remand to the trial court to make that determination.

¶30 In sum, per *Wilkinson*, the trial court must order restitution for economic losses directly caused by the criminal conduct but cannot order restitution for consequential damages. Victims' economic losses incurred because they exercised, enforced, or defended their rights in a criminal case are allowed as restitution. But when those losses are private attorney fees, they are allowable as restitution only when an attorney is reasonably necessary to assist victims in enforcing those rights. Such fees directly flow from the criminal conduct. If that showing is lacking, the fees are the consequence of something other than the criminal conduct—for example, the victim's discomfort with the criminal process, mistrust of the prosecutor, or a strategy that the attorney monitor the criminal proceedings to assist efforts in a related civil case. Such fees are consequential damages, which are not allowable as restitution.

¶31 The record here reflects that the vast majority of the Gust Rosenfeld fees did not directly flow from Reed's criminal conduct.

Instead, they seemingly stemmed from C.C.'s unease with navigating the criminal justice system and her distrust that the prosecutor would devote sufficient time and effort to prosecuting the case. As such, excepting the two billing entries previously described, *see supra* ¶ 28, C.C.'s fees were indirect, consequential damages, and the trial court therefore erred by awarding those fees as restitution. *See Wilkinson*, 202 Ariz. at 29 ¶ 7; §§ 13-105(16), -603(C), -804(B). Our decision does not preclude C.C. from seeking reimbursement of those fees in a civil proceeding. *See U.S. Fid. & Guar. Co. v. Frohmiller*, 71 Ariz. 377, 380 (1951) (acknowledging that attorney fees can be awarded as damages in a civil lawsuit when incurred because of the defendant's wrongful acts).

## CONCLUSION

**¶32** We reverse the trial court's restitution order to the extent it orders payment of C.C.'s attorney fees, excepting those fees reflected in Keller's billing entries dated November 9, 2015, and November 19, 2015. We remand to the trial court to determine whether the amounts reflected in these entries should be ordered as restitution. We vacate the court of appeals' opinion.